343 So.2d 175 (1977)
STATE of Louisiana
v.
Bela ANDRASI.
No. 58577.
Supreme Court of Louisiana.
February 28, 1977.
Mary Olive Pierson, Sheldon D. Beychok, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Lennie F. Perez, Marilyn C. Castle, Asst. Dist. Attys., for plaintiff-appellee.
CALOGERO, Justice.
Defendant Bela Andrasi was one of a number of persons against whom charges were filed in connection with an incident which occurred at the home of H. Alva Brumfield in Baton Rouge, Louisiana on May 25, 1973. On that date Mr. Brumfield's home was burglarized and when Mr. Brumfield arrived at his home, unexpectedly apparently, an armed robbery took place and he was murdered.
Defendant admittedly drove an automobile for certain accomplices on the night in question for the acknowledged purpose of participating in, or aiding and assisting his accomplices, in the perpetration of a burglary of the Brumfield premises. In addition to a murder charge, defendant was charged with armed robbery and conspiracy to commit armed robbery. Defendant confessed his complicity in the incident and voluntarily testified at the preliminary hearing of one of his accomplices in State of Louisiana v. Eugene Redwine.
Following plea bargaining with the district attorney's office, defendant pled guilty to the murder charge "without capital punishment," a sentence which carries the possibility of parole, probation, or suspension of sentence.
However, prior to sentencing, defendant filed a motion to withdraw his guilty plea alleging that he "did not understand the nature and consequences of his act in pleading guilty" and that his guilty plea had been the result of a plea bargain agreement between him and the district attorney, an agreement which, he claims, "the district attorney does not intend to live up to and has not done so to date."
After a hearing the trial judge denied the motion to withdraw the guilty plea and on May 7, 1976 defendant was sentenced to confinement for the balance of his natural life at hard labor and was committed to the custody of the Louisiana Department of Corrections in accordance with La.R.S. 15:824.
Defendant now appeals his conviction and sentence. His single assignment of error is *176 the contention that the trial judge erred in refusing to permit him to withdraw his guilty plea. The indictment charged defendant with committing the crime of first degree murder on May 25, 1973. Our murder statute then provided that "whoever commits the crime of first degree murder shall be punished by death." However, the United States Supreme Court decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) made it impossible for this state to impose the death sentence under the existing murder statute. In response to this decision, our legislature amended La.R.S. 14:30, by Act No. 109 which became effective on July 2, 1973, to provide for the imposition of a mandatory death sentence for first degree murder. That statutory amendment became effective after the crime with which defendant was charged had been committed. Defendant's maximum permissive sentence at the time he entered his guilty plea was life imprisonment without benefit of parole, probation, or suspension of sentence.
At the hearing on his motion to withdraw the plea, defendant testified that in return for his plea of guilty, he was promised a life sentence with benefit of parole, probation and suspension, nol pros of the armed robbery and conspiracy to commit armed robbery charges, and he was assured by the district attorney that he would be granted parole in ten and one half years, that the parole would not be contested by Brumfield's family, and that he would not be required to serve his sentence at Angola, but rather would remain in protective custody. Defendant further testified that the district attorney had advised him that when he (defendant) was questioned in open court he should conceal the various promises which prompted his pleading guilty except the life sentence without capital punishment. In this way he accounts for responses during his Boykinization which are at variance with his motion testimony.
The district attorney, Mr. Ossie Brown, and the assistant district attorney, Mr. Lennie Perez, with whom the plea bargain was allegedly made, were called by the state to testify at the hearing. Their testimony was consistent. Both men stated that they had met with defendant on a number of occasions and that a number of these meetings had been called by defendant. They stated that, well in advance of any plea bargaining, defendant admitted his involvement in the incident, and voluntarily agreed to cooperate by testifying for the state in the prosecution of his accomplices. They admitted that an agreement was later negotiated between defendant (in the presence of his attorney) and the district attorney.
The district attorney and his assistant admitted agreeing to nol pros the two ancillary charges (which they did), and to accept a plea of guilty without capital punishment (which resulted in a straight life term rather than one without benefit of parole, probation or suspension of sentence). They denied, however, that they assured defendant he would serve only ten and one-half years, and they denied having discussed the intentions of the Brumfield family. With respect to the place at which defendant would be confined, they contend that they promised defendant only that they would do what they could to try to convince the Department of Corrections not to confine him to Angola, and that they were still intending to make that effort[1] even though defendant refused to testify at the trial of Eugene Redwine.
We note that defendant did not call the attorney who represented him during these negotiations to testify at the hearing on his motion. We note, in addition, that in response to the district attorney's question on cross-examination, "What made you change your mind and decide to ask to change your plea?," defendant stated that his decision was prompted in part by his rekindled belief in God and by his feeling that he did not commit the murder or armed robbery, although he admittedly participated in a burglary of the Brumfield premises in that he drove the "get-away" car.
*177 The applicable provision which governs the disposition of this case is Article 559 of the Louisiana Code of Criminal Procedure. That article provides in pertinent part that:
"The court may permit a plea of guilty to be withdrawn at any time before sentence."
The discretion to permit a guilty plea to be withdrawn is vested in the trial judge. State v. Baudoin, 334 So.2d 186 (La.1976); State v. Barber, 262 La. 443, 263 So.2d 719 (1972). The discretion accorded the trial judge under this provision, however, cannot be exercised arbitrarily and abuse of that discretion can be corrected upon appellate review. State v. Baudoin, supra. We must therefore decide whether the trial judge abused his discretion when he refused to permit the guilty plea to be withdrawn.
Our review of the record convinces us that the trial judge did not abuse his discretion in refusing to permit defendant to withdraw his guilty plea. Defendant's response to the trial judge's Boykin questions indicate that he fully understood the consequences of his plea and the nature of his sentence. The trial judge was aware of the fact that defendant was a native of Hungary and might have had some difficulty in understanding the English language. In view of this fact, the trial judge very commendably attempted to inform defendant of his rights in the simplest of terms. Defendant's responses were intelligent and well articulated. They clearly indicate that he understood the trial judge's explanations and the questions propounded to him. The evidence does not support the contention that the district attorney's office, in plea bargaining with defendant, made any promises which it could not legally keep. We are satisfied, in view of the trial judge's extensive interrogation of this defendant prior to his acceptance of the guilty plea, that he could not reasonably have believed that the district attorney or the assistant district attorney had the power or authority to determine where he would serve his sentence or the power to assure him a parole after serving ten and one half years. And it was made quite clear to him that with respect to the former, the district attorney was promising no more than an attempt in this regard.
We find the assignment without merit. Accordingly, we affirm defendant's conviction and sentence.
NOTES
[1] Defendant has not yet commenced serving his term. Thus it remains to be seen whether defendant will in fact succeed in his effort to avoid serving time at Angola.