NORRIS, Judge.
The defendant, Roosevelt Potts, was charged by bill of indictment, docket No. 49,081, with aggravated battery in violation of LSA-R.S. 14:34. Defendant initially pled not guilty but pursuant to a plea bargain, withdrew that plea and entered a plea of guilty. In return, the state dropped an aggravated battery charge in docket No. 49,082 which stemmed from a separate incident; in addition, on the same date, the assistant district attorney handwrote at the bottom of bill of indictment No. 49,081, “amended to one count agg. battery.” Pri- or to sentencing, the defendant filed a motion to withdraw the guilty plea, arguing that at the time of his plea he believed that bill No. 49,081 charged him with seven counts of aggravated battery when in fact it only charged him with one count; according to defendant, the guilty plea was induced by a mistake of fact and, thus, was not intelligently made by him. After a hearing the motion was denied; Potts applied to this court for supervisory writs. The district court imposed a suspended sentence of three years at hard labor with the special condition that he serve six months in the parish jail, together with other conditions. Defendant appealed the sentence, urging that the court did not comply with the sentencing guidelines of C.Cr.P. 894.1 and imposed an excessive sentence. The matters were consolidated for resolution in this court.
On May 14, 1988 the defendant, along with codefendants Nathaniel Griffen and Charlie Robinson, drove to the Magnolia Lounge in Rayville in search of Jamie Beach, who had earlier fought with Robinson. The three men saw Beach’s car in the parking lot of the lounge, parked their car, and walked toward the lounge. A fight ensued in the parking lot. Potts, Griffen, and Robinson left the scene in their car and returned with two shotguns. At about 1:00 a.m., Potts allegedly fired a shotgun in the air toward the lounge and then began to run. Seven patrons of the lounge were struck by shotgun pellets and treated for injuries.
WITHDRAWAL OF THE GUILTY PLEA
Bill of indictment No. 49,081, charging defendant with aggravated battery read:
ROOSEVELT POTTS committed a battery with a dangerous weapon, by firing a shotgun into a crowd of people injuring the following people: JOHNNY LORD, *119 WADE DRUMON [sic\ ALVIN SMITH, SHARON DEW, CHERLY [sic ] STANLEY MASTERS, CAROL BROWN AND LYDIA BRADSHAW, in violation of R.S. 14:34.
The caption on the back of the bill states Potts was indicted for seven counts of aggravated battery; the court minutes also consistently indicate seven counts. Potts originally pled not guilty on August 17, 1988; according to the court minutes, this plea was entered “to each charge” and trial of “these cases” was set for December 5. Pursuant to a plea bargain, Potts changed his plea to guilty on November 30; in return, the state dropped the aggravated battery charge in No. 49,082. On the same date, according to the indictment and the minutes, the prosecutor amended No. 49,-081 to charge one count. The State steadfastly maintains that Potts was originally charged with one count of aggravated battery in that bill. In brief it now claims that the amendment was made only to “clarify” the bill, which (it claims) charged only one count in the first place. The transcript does not show that the prosecutor stated for the record at the Boykin hearing the exact nature of the original charge or charges, the reason for the amendment, how it related to the plea bargain, or even that he had made the amendment. The prosecutor merely informed the court that in No. 49,081 Potts “committed battery with a dangerous weapon by firing a shotgun into a crowd of people” and in No. 49,082 “committed battery with a dangerous weapon upon Donald L. Collins[.]” The court accepted the guilty plea. The court reporter’s certificate of correctness at the end of the guilty plea transcript reiterates that the bill in No. 49,081 included seven counts.
A day or two before sentencing on March 15, 1989 Potts’s new attorney, J. Gary Par-kerson, filed two motions, including one to withdraw the prior guilty plea. A hearing on this motion was conducted right before sentencing. At the hearing Potts testified he believed that if he did not enter the guilty plea, he would be tried on a total of eight counts of aggravated battery, seven in No. 49,081 and one in No. 49,082. According to Potts, he entered the guilty plea under the mistaken belief that he faced exposure on a total of eight counts instead of two if he was tried as charged; this gave the state greater leverage in plea bargaining than it truly had. The defense argued that if, contrary to his belief at the time, Potts had known he was exposed to only two counts (20 years instead of 80), he would not have entered the plea bargain but would have gone to trial.
Also testifying at the hearing was Leo Dan Andrews, Potts’s football coach at Rayville High School. Potts had been residing with Coach Andrews since immediately after the alleged shooting and had discussed the case with him. Coach Andrews also discussed the case with Potts’s counsel, Theo Coenen, as well as with the prosecutor before arraignment; he understood Potts was being charged with seven counts in No. 49,801, to be reduced to one if he pled guilty. Ron Adcock, Potts’s legal guardian, testified that no one discussed the case with him prior to arraignment. Afterwards, he talked to Potts, who said that on the advice of Coach Andrews and the prosecutor, he had pled guilty to one count of aggravated battery. Potts did not tell Adcock how many counts were originally filed, but Adcock “understood” it was seven. The last witness to testify was Theo Coenen, Potts’s first attorney. On direct examination by the district attorney, Theo Coenen stated his “reading” of the bill was that it charged Potts with aggravated battery against seven people; on further questioning, he said it was one count against seven people. R.p. 41. On cross-examination by Mr. Parkerson, however, he stated that the prosecutors advised him that without the plea bargain, Potts would be tried on “a total of eight counts of aggravated battery.” R.p. 43. On redirect, he stated his “understanding” was that Potts would be “tried as charged” if he did not plead guilty. R.p. 44.
The trial court denied the motion, noting that if it had been raised earlier the court may have granted it. It commented that defendant was Boykinized at length and his guilty plea was intelligently made. It not *120 ed that Theo Coenen “looked at the charges as they were” and advised him “to the best of his ability.” R.p. 48. The court also noted, however, that until the instant hearing, it was unaware that any second, unrelated, charge was involved in the plea bargain.
A guilty plea is not valid unless it is an intelligent and voluntary choice on the part of the accused. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Halsell, 403 So.2d 688 (La.1981). A guilty plea is not intelligently given by the accused if it is made under a material mistake of fact. See State ex rel. Curry v. Guillory, 441 So.2d 204 (La.1983); State ex rel. LaFleur v. Donnelly, 416 So.2d 82 (La.1982). A court, when called upon to ascertain an accused’s state of mind, has the power, notwithstanding a record waiver of constitutional rights, to determine whether other factors present at the time of a guilty plea colloquy record, were sufficient to render the plea involuntary or unintelligent. State v. Lewis, 421 So.2d 224 (La.1982); State v. Griffin, 535 So.2d 1143 (La.App. 2d Cir.1988). When ruling on a motion to withdraw a guilty plea, the trial court should look beyond the Boykinization and consider all relevant factors. State v. Griffin, supra; State v. Banks, 457 So.2d 1264 (La.App. 1st Cir.1984). LSA-C.Cr.P. art. 559 provides that the court may permit a plea of guilty to be withdrawn at any time before sentencing. Discretion to permit the withdrawal of a guilty plea is vested in the trial judge. That discretion, however, cannot be exercised arbitrarily and an abuse of discretion can be corrected upon appeal. State v. Compton, 367 So.2d 844 (La.1979); State v. Andrasi, 343 So.2d 175 (La.1977); State v. Helsley, 457 So.2d 707 (La.App. 2d Cir.1984).
Underlying the situation is the fact that an accused has a constitutional right to be billed in such a way that he can be informed of the nature and cause of the accusation against him. LSA-Const. art. 1, § 13 (1974); State v. Scott, 278 So.2d 121 (La.1973); State v. Ainsworth, 528 So.2d 599 (La.App. 2d Cir.1988). If the bill of indictment appears to charge a defendant with multiple counts, when in fact there is only one count against him, the nature of this accusation may encourage him to enter a plea bargain to escape a possible conviction on the multiple counts. Cf. State v. Ainsworth, supra.
The totality of the record evidence does not clearly show whether the State intended to charge Potts with seven counts or only one in indictment No. 49,081. However, the State steadfastly asserts that only one charge was intended. The bill, in our opinion, is internally inconsistent and cannot be read to properly advise the defendant of the exact number of charges against him. Cf. State v. Ainsworth, supra. Everybody thought it charged seven counts. The minute clerk repeatedly identified it as a seven count indictment. Potts testified that he believed a total of eight counts were pending against him in the two bills and if he did not accept the plea bargain and plead guilty to one count, the state would try him on all eight counts. Coach Andrews and perhaps Theo Coenen had the same understanding. Coenen’s testimony, however, is troublesome. He testified that the district attorney and his assistant told him that if the plea was not entered into pursuant to the plea arrangement, the defendant would be tried on a total of eight counts of aggravated battery. Coenen later equivocated and said the prosecutors told him that if the defendant did not accept the plea arrangement, he would be “tried as charged.” Finally, for some reason, the assistant district attorney felt the need to amend the bill of indictment to reflect one count. This strikes us as utterly unnecessary unless he considered the bill ambiguous or actually believed that Potts was charged with seven counts. Even reviewing the entire record with the benefit of hindsight, this court is not able to determine exactly how many charges the State intended to level against the defendant.
The State argues that any confusion arising out of the wording of the bill was created by the media, and not shared by the parties involved. When asked how he concluded that the two bills charged him *121 with eight counts and, subsequently, one count, Potts replied, “that’s what the newspaper was saying.” He then testified that he was not aware of the newspaper article until after the guilty plea. Potts’s testimony about the content and effect of the newspaper story is not clear enough to support the state’s contention. It can be interpreted to mean that he thought the bills charged eight counts until he read the newspaper; or that he thought the bills charged two counts, but after reading the newspaper, thought they charged eight. The newspaper article was not offered into evidence and there was no testimony concerning its contents. Consequently, we do not know what was stated in the article or when it' was written, and it provides no guidance to this court in determining the original intended charge or charges against the defendant.
Based on this record, it is a fortiori reasonable that Potts did not understand the nature of the charges against him. Under the circumstances he could have justifiably believed that he was charged with a total of eight counts. He was a 17-year old high school student and football player at the time of the plea and had been living alone until slightly after the incident and had little or no guidance from his father or legal guardian. His mother was deceased. Furthermore, he had no prior criminal record and thus had no experience with the criminal judicial system. His argument that he entered the guilty plea under a material mistake of fact has merit. The totally ambiguous and confusing nature of the charges overstated the state’s true bargaining power with the defendant and exaggerated the benefit accruing to the defendant as a result of the plea.
Moreover, there is no evidence in this record to show that Potts moved to withdraw his plea because he was displeased with the sentence he was to receive. See State v. Robinson, 311 So.2d 893 (La.1975). The record shows he was not informed of his sentence when he filed the motion to withdraw or when the hearing was held.
We are always reluctant to reverse a trial court in the exercise of its wide discretion. However, this record mandates a finding that the defendant was misap-prised, albeit unintentionally, of the charges against him, with the result that he entered a plea he would not have entered had his true sentencing exposure been made clear. We are therefore constrained to find that the trial court abused its discretion in refusing to allow the defendant to withdraw his guilty plea. Accordingly, the writ is granted and made peremptory, the guilty plea is vacated, the conviction and sentence are reversed and the case remanded to the district court for further proceedings in accordance with law.
WRIT GRANTED. GUILTY PLEA VACATED; CONVICTION AND SENTENCE REVERSED; CASE REMANDED.