711 So.2d 281 (1997)
STATE of Louisiana, Appellee,
v.
Gerald Owens BATES, Appellant.
No. 29252-KA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1997.
*282 Paul Henry Kidd, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Marcus R. Clark, Jimmy D. White, Assistant District Attorneys, for Appellee.
Before BROWN, STEWART and GASKINS, JJ.
STEWART, Judge.
Defendant, Gerald Owens Bates ("Bates"), pled guilty to the amended charges of count one, possession of cocaine with intent to distribute, a violation of R.S. 40:967; and count two, conspiracy to distribute cocaine, a violation of R.S. 40:979 and R.S. 40:967. On count one, the trial court sentenced Bates to eighteen years at hard labor with all but the first nine years suspended. The trial court fined Bates $2,000, subject to payment during the term of his probation. On count two, Bates received seven and one half years at hard labor to run concurrent with count one. On Bates' good time or parole discharge, he was sentenced to five years supervised probation. Bates was given credit for all time served since his arrest. From his appeal, he asserts two assignments of error. For the following reasons, we affirm the conviction and sentence.

FACTS
On August 30, 1994, West Monroe police officers stopped a van for a routine traffic violation. The driver, Michael Thomas, presented a California I.D. card. The officer noted that the driver was acting extremely nervous. As the officer moved toward the van to speak with the passenger, he observed the passenger, later identified as Bates, place two suspected marijuana cigarettes in a cassette tape case and place the tape case between the seats. Bates was ordered out of the van, and at that time, Bates and the driver admitted to having marijuana for personal use in the van. The driver consented to a search of the vehicle. While the officers searched the van they noticed an irregularity in the screws on the side door panel. The officers removed the panel and a brick-shaped object wrapped in duct tape was found. At that point, Bates attempted to flee the scene, but was apprehended a short distance away. Ultimately, two bricks of suspected cocaine, with a total weight of five pounds, were found in the van.
Bates confessed that he was to be paid $1000.00 for helping to drive the cocaine to West Monroe. He cooperated with the police by providing information regarding the driver of the van, Michael Lee Thomas a.k.a. Tim Boyle, and his brother, Richard Lloyd Collins a.k.a. Terry Quinton Boyle ("Boyle brothers").
*283 The State of Louisiana indicted Bates and the Boyle brothers for possession of cocaine more than 400 grams, and conspiracy to distribute cocaine. Federal prosecutors ultimately filed cases against the Boyle brothers for conspiracy to possess with intent to distribute cocaine. The federal government did not indict Bates. Subject to a plea agreement, Bates pleaded guilty to amended charges of possession of cocaine, and conspiracy to distribute cocaine. The plea was in exchange for his complete cooperation with both the state and federal governments in their cases against the Boyle brothers. The State deferred Bates' sentencing until the conclusion of the Boyle brothers' federal cases.

DISCUSSION
Assignment #1: The trial court erred in failing to permit the defendant to withdraw his guilty plea.
Bates argues that the trial court erred in failing to allow the defendant to withdraw his guilty plea after the state allegedly violated a plea agreement. The alleged violation was that the Assistant U.S. Attorney failed to provide a letter to the court regarding Bates' cooperation in a federal case involving the Boyle brothers. Additionally, Bates argues that he only pled guilty to the charges of the bill of information for purposes of cooperation with the federal case against the Boyle brothers. It was not Bates' intention to be sentenced on those particular charges. Conversely, the state contends it complied with the terms of the plea agreement.
La.C.Cr.P. art. 559(A) provides that the court may permit a plea of guilty to be withdrawn anytime before sentencing. The clear language of the article provides that the withdrawal of a guilty plea is discretionary with the trial court. It is subject to reversal only if that discretion is abused or arbitrarily exercised. State v. Johnson, 406 So.2d 569 (La.1981); State v. Hall, 26,006 (La.App.2d Cir. 5/4/94), 637 So.2d 645, writ denied, 94-1373 (La.9/30/94), 642 So.2d 868; State v. Scott, 600 So.2d 756, 758 (La.App. 2d Cir.1992); State v. Jones, 610 So.2d 1014, 1015 (La.App. 1st Cir.1992). A defendant has no absolute right to withdraw a guilty plea. Scott, supra; State v. Essex, 618 So.2d 574 (La.App. 2d Cir.1993). Again, withdrawal of a guilty plea after sentence is discretionary with the trial court, subject to reversal only if that discretion is abused or arbitrarily exercised.
A guilty plea is invalid when a plea agreement induces the defendant to plead guilty or when the defendant reasonably believes is a plea agreement and the terms of the bargain are not satisfied. State v. Holmes, 475 So.2d 1057 (La.1985); State v. Jones, 546 So.2d 1343 (La.App. 3d Cir.1989).
Where a defendant's misunderstanding is not induced by or attributed to representations made by the district attorney or the trial court, there are no grounds for withdrawal of the plea. Without fraud, intimidation or incompetence of counsel, a guilty plea is not made less voluntary or less informed by the considered advice of counsel (cites therein omitted). State v. Hall, 26,006 (La.App.2d Cir. 5/4/94), 637 So.2d 645.
On August 2, 1995, pursuant to a plea agreement, Bates pled guilty to an amended bill of information charging him with possession of cocaine with intent to distribute and conspiracy to distribute cocaine. The plea agreement was outlined in a letter to defense counsel dated August 2, 1995, which was filed into the record. During the plea hearing and for the record, the state explained the terms of the plea agreement:
So that the plea is fully explained on the record and we would state and the defense wants to put everything on the record, the agreement is that the state will allow the defendant to plead to the amended bill of information which as to count 1, possession of cocaine with intent to distribute, gives an exposure of five to thirty years at hard labor and a fine up to fifty thousand dollars ($50,000). In count 2, conspiracy to distribute cocaine, the exposure of two and a half to fifteen with the fine of up to twenty-five thousand dollars ($25,000). The state is recommending that those sentences be run concurrent. We're making no other recommendation as to sentence *284 other than of course the Court can't go over the maximum sentence. Also as part of the expressed agreement ... as part of the plea agreement is that the defendant agrees to truthfully testify at all trials, retrial, all hearings and all grand juries whether they be state or federal, on all co-conspirators including but not limited to the two individuals that he was arrested with. One beingSee if I can get their names real quick.
Defense Attorney:
A Timothy Boyle and Terry Boyle.
Prosecutor:
Timothy and Terry Boyle. Also they have aliases of Michael Thomas and Richard Collins. Also the defendant acknowledges that he has been truthful with the FBI when he was interviewed by Agent Tanza and truthful with Metro Narcotics when he was interviewed by them as to everyone's participation in this conspiracy. Also the defendant agrees to cooperate fully in all hearings or trials or preparations for these... for the trials or hearings with state or federal investigators, Assistant D.A.'s (sic) or Assistance (sic) U.S. Attorney. Also the state reserves the right to set the plea aside if the defendant fails to one hundred percent comply with the above. That is testify or cooperate in preparation for federal or state hearings or trials. There is no agreement in sentence other than they will run concurrent. The state and the defense will ask the court to continue the sentencing until the co-defendant and the co-conspirators' cases or case is completed and that the defendant has testified or it has been acknowledged that the defendant's testimony is no longer needed. The state will advise, along with the defense, will advise the Court as to the defendant's cooperation against the co-conspirators for whatever consideration this Court feels it warrants. I have talked to the U.S. Attorney's office and they have agreed that if the defendant complies with the above then he would be unindicted coconspirator and that if he fails to comply with the above, he will be an indicted co-conspirator. That is the full extent of the agreement as I know it and there are no other agreements implied or expressed.
The Court: Is that what you understand the agreement to be, Mr. Kidd?
Defense Attorney: I was just asking him. Do you understand that?
Defendant: I understand.
Defense Attorney: He understands.
Court: And is that what you want to do Mr. Bates?
Defendant: Yes, sir.
Court:
Do you want to enter into the agreement as described by Mr. Clark and enter a guilty plea in consideration?
Defendant: Yes, sir.
Court:
All right. Swear Mr. Bates. At that point, the court went through a Boykin colloquy advising defendant of all of his rights prior to accepting the guilty plea.
The point of contention appears to have arisen at the defendant's sentencing hearing held on June 24, 1996. The defendant through counsel moved to withdraw his guilty plea based on an alleged breach of the plea agreement.
Defense counsel stated, ... I have not read this letter that Mr. Clark wrote me on August the 2nd. Nevertheless, one of the considerations was we didn't know ... the state didn't know and the defense didn't know whether there'd (sic) be actually a trial or not so it was important that the plea be entered on the two counts and so forth. Mr. Clark tells me this morning that there was some reduction in the amount of exposure on the first count. But from the standpoint of the plea, it was... we understood the state would be ... I mean the federal people would be in a better position if he pled to both counts. So we pled to both counts because then it would not appear that he was cooperating with the feds. But now to come back with what she's (sic) told this court I feel that that's (sic) a violation of New York versus Santa Bello (sic). And for that reason we move to withdraw that plea. I think the defendant has something. I've settled many things to the defendant predicated *285 on all of these things over the year and I feel like I've been sort of made a fool out of because of what I relayed to the defendant. But I don't see any choice at this time except to withdraw the plea because that not whatThat was as I understood it, that's not what the intent of the agreement was. We've kept our part of the agreement. It's gone on for almost a year now. And to come back in and say that we have not fulfilled our part of the agreement I think is egregious conduct.
During the discussion at the sentencing hearing, Assistant U.S. Attorney, Kelly Pomes spoke with both the court and the prosecutor, and indicated she did not believe the defendant had been 100 percent forthcoming with information. However, both the state and the court indicated the information provided by Pomes was not being considered.
The state indicated, ... There was part of a message which I did not understand and that was that the U.S. Attorney wanted me to know that he was not one hundred percent forthcoming. Whatever that meant did not mean anything important to me ... I don't know what ... how that influenced the court or if the court took that to mean anything. Obviously it didn't mean anything to me or I'd bethe court knows my representationI'd be filing a motion to withdraw the plea as the defendant having not lived up to his plea agreement (emphasis added).
Similarly, the court indicated it did not consider Pomes statement. "... Be that as it may, I'm not going to penalize or punish you for conduct that has not been charged by the government. I'm going to recognize your cooperation. I think that both you and the state have lived up to your end of this bargain, if you will" (emphasis added). The court went on to state, "I'm not going to allow you to withdraw the plea based upon information that was not significant enough to be addressed by written form to me and I think it would be required to be divulged to you as well, Mr. Kidd ... I'm not going to hold that against you" (emphasis added). This remark obviously referred to the statement or comments from Pomes. Additionally, the trial court indicated that it changed the defendant's intended sentence in recognition of the defendant's cooperation.
After the sentencing hearing and according to the trial court's request, a letter from Assistant U.S. Attorney Pomes was filed in the record over the defendant's objection. Essentially, the letter states that a determination had been made that the Bates defendant had not cooperated completely, and his testimony would not have been used if the matters had gone to trial.
From the record, we conclude that the trial court did not abuse its discretion in denying the defendant's request to withdraw his guilty plea. As determined by the trial court, there was no breach of the plea agreement. Both parties complied with the terms of the agreement, and Assistant U.S. Attorney Pomes' failure to provide Bates with a letter regarding his cooperation was not a violation of the agreement.
Even if this court assumes that the plea agreement was contingent upon a favorable letter from Pomes, the state and the trial court showed that the less than favorable review was not being considered. This is significant. The determination of whether Bates fully cooperated was a decision left to the U.S. Attorney's office. A letter of complete cooperation could not be submitted if the U.S. attorney's office was not satisfied with the information provided by Bates. Apparently that was the situation here. Although the U.S. Attorney's office found that Bates did not fully cooperate, the trial court and the state chose to consider the Bates' positive cooperation that led to the indictments of the Boyle brothers. According to the express terms of the agreement, the state could have revoked the agreement because of Bates' failure to cooperate completely. Even considering the comments made by Pomes, the state chose not to revoke the agreement, giving more credence to the fact that the negative information provided by Pomes was not considered.
Additionally, there is no indication in the record that there would be a change in the charges to which Bates pled guilty after the Boyle brothers' cases. The only agreement regarding the federal case was that Bates *286 would be sentenced after the cases had been concluded or after a determination that his testimony would not be needed in those cases.
Bates received the benefit of the agreement when he entered his guilty plea, and the trial court did not abuse its discretion in failing to allow him to withdraw that plea. The record is exceedingly clear as to the plea agreement and its terms. Further, the record provides no indication that all conditions of the agreement were not satisfied.
This assignment is without merit.
Assignment # 2: The sentence imposed against Bates was excessive.
Bates alleges that the sentence imposed in the case is excessive based on the defendant's first offender status. Also, he argues that he pled guilty to the charge only to help with the prosecution of the Boyle brothers. He did not intend to be sentenced on the charged crimes. The state contends that Bates sentence is not excessive because Bates received a significant reduction in possible sentencing exposure based on his plea agreement.
Bates was initially charged with possession of cocaine more than 400 grams, and conspiracy to distribute cocaine. The sentencing range for possession of cocaine more than 400 grams is not less than thirty years nor more than sixty years at hard labor with a fine of not less than $250,000, nor more than $600,000[1]. The sentencing range for conspiracy to distribute cocaine is not less than 2½ years nor more than fifteen years at hard labor and a fine of not more than $25,000 may be imposed.
After entering into a plea agreement, Bates pled guilty to possession of cocaine with intent to distribute, and conspiracy to distribute cocaine. The sentencing range for possession with intent to distribute is not less than five years nor more than thirty years at hard labor and a fine of not more than $25,000 may be imposed. The sentencing range for the conspiracy charge remained the same.
On June 24, 1996, after several delays related to the federal prosecution of the Boyle brothers, Bates was sentenced. On count one, possession of cocaine with intent to distribute, the trial court sentenced Bates to eighteen years at hard labor; all but the first nine years suspended. Bates was fined $2,000 with eighteen months default time, the fine made payable over the term of the Bates' probation. On count two, conspiracy to distribute cocaine, Bates received seven and one-half years at hard labor to run concurrent with count one. Upon release by good time or parole, Bates was sentenced to five years probation, and credit for time served.
To evaluate a sentence for excessiveness, an appellate court uses a two-step analysis. First, we examine whether the record demonstrates consideration of the criteria set forth in La.C.Cr.P. art. 894.1; State v. Smith, 433 So.2d 688 (La.1983). Next, we determine if the sentence is unconstitutionally excessive Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant.
A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate when the crime and punishment, considered in light of the harm done to society, shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La. 1985); State v. Strange, 28,466 (La.App.2d Cir. 6/26/96), 677 So.2d 587; State v. Tuttle, 26,307 (La.App.2d Cir. 9/21/94), 643 So.2d 304.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, *287 we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La. 1983); State v. Hudgins, 519 So.2d 400 (La. App. 2d Cir.), writ denied, 521 So.2d 1143 (1988); State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988); State v. Thompson, 25,583 (La.App.2d Cir. 1/19/94), 631 So.2d 555; State v. Strange, supra.
"[I]n cases where the defendant has pled guilty to an offense that does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense." State v. Stephens, 604 So.2d 203 (La.App. 2d Cir.1992).
In examining the record, it is apparent that the trial judge considered the criteria set forth in La.C.Cr.P. art. 894.1. For the record, the trial judge indicated that he noted that Bates cooperation with the prosecution of the Boyle brothers was given considerable weight by stating "I had intended to impose a severe sentence in this case and intended on doing so today, but I'm going to make that a split sentence and make a major portion of this sentence suspended in recognition of the defendant's cooperation."
The trial judge noted that Bates was allowed to plead guilty to a lesser charge. Initially, the trial judge recognized a prior criminal charge which appeared on Bates' presentence investigation (PSI). After the defense attorney reminded the trial judge of a previous conference in which the judge indicated he would not consider the charge, the trial judge agreed it would be unfair to consider the charge when the records could not be produced.
The trial judge noted the fact that Bates was not the main actor, but noted nevertheless that he was aware of the situation that he was involved. However, the trial judge chose not to impose a suspended sentence because of the harm to the community that such a large quantity of drugs involved.
Bates background was noted, including his "remorse and desire to become a productive member of society." The trial judge noted that Bates had a child, and acknowledged receipt of several letters from various individuals, as well as Bates. Therefore, we conclude that the trial judge gave adequate consideration of all the above listed factors before pronouncing sentence. As the record indicates, the trial court adequately considered the criteria of La.C.Cr.P. art. 894.1, the sentence must be examined for constitutional excessiveness.
Initially, Bates was exposed to sentencing of up to seventy-five years at hard labor and possible fines of up to $625,000. By entering into the plea agreement, he reduced the sentencing exposure to forty-five years at hard labor with a fine of not more than $50,000. Bates was eventually sentenced to twenty-five years with a $2,000 fine. Nine years of his sentence was suspended.
On count one, Bates was sentenced to a mid-range sentence of eighteen years out of a possible thirty years. On count two, Bates was sentenced to seven½ years that is a mid-range of the possible 15-year sentence. These sentences are not excessive considering the fact that Bates received the benefit of being allowed to plead to an amended lesser charge. A plea bargain which brings about substantial benefits to a defendant is a legitimate consideration in sentencing. State v. Lighten, 516 So.2d 1266 (La.App. 2d Cir. 1987); State v. Winzer, 465 So.2d 817 (La. App. 2d Cir.1985).
In State v. Wright, 513 So.2d 477 (La.App. 2d Cir.1987), this court affirmed concurrent, hard labor sentences of fifteen years for distribution of cocaine and two and one half years for possession of cocaine. The defendant, a first felony offender, was engaged in transporting cocaine into Louisiana from Texas and was involved in selling drugs for profit on what was termed a "significant scale." The defendant also received the benefit of a favorable plea agreement, having been originally charged with three counts of distribution of cocaine involving sales of some two and a quarter ounces of cocaine.
In State v. Rattler, 605 So.2d 211 (La.App. 2d Cir.1992), this court held that a defendant's sentence was not excessive where the defendant was the recipient of a favorable plea bargain. As originally charged, the defendant was exposed to over 100 years *288 imprisonment and possible fines of over $180,000.00. The plea bargain reduced that exposure to sixty years at hard labor and fines of up to $30,000.00, of which defendant received a sentence of nineteen years and fines of $6,000.00.
In State v. Hatter, 602 So.2d 247 (La.App. 2d Cir.1992), a sentence of eighteen years with credit for time served imposed on defendant convicted of sale of crack cocaine was not excessive, although defendant was a 20-year-old first felony offender and sold only a small amount of cocaine, in view of plea bargain dismissing aggravated battery charge, and defendant's misdemeanor convictions, several of which involved crimes against the person. While the defendant in Hatter, supra, had a previous misdemeanor conviction, there was only a small amount of cocaine involved, unlike the present case where over 400 grams were involved.
Bates compares the instant case to that of State v. Smith, 576 So.2d 105 (La.App. 2d Cir.1991), wherein a 28-year-old first offender's sentence of ten years for distribution of cocaine was reduced to eight years by this court. Other than the first offender status, there are no strong similarities in these cases. The defendant in Smith, supra, was a drug addict with a 19-month-old daughter and expecting twins at the time of her sentencing. While Bates is the father of an 8-year-old son, the record is unclear whether the child is solely dependent upon the defendant for support. More notably in Smith, there was only a small amount of cocaine involved and the defendant was a drug addict. Bates denies any drug addiction.
Bates' mid-range sentences for possession of cocaine with intent to distribute and conspiracy to distribute cocaine are not grossly out of proportion to the seriousness of the offense when considering the defendant benefited substantially from a plea agreement. The sentence when viewed in light of the defendant's conduct are more than purposeless and needless inflictions of pain and suffering. The sentences are proportionate to the charged crimes, and do not shock the sense of justice.
This assignment lacks merit.

Errors Patent

Default Jail Time
La.C.Cr.P. art. 884 provides:
If a sentence imposed includes a fine or costs, the sentence shall provide that in default of payment thereof the defendant shall be imprisoned for a specified period not to exceed one year; provided that where the maximum prison sentence which may be imposed as a penalty for a misdemeanor is six months or less, the total period of imprisonment upon conviction of the offense, including imprisonment for default in payment of a fine or costs, shall not exceed six months for that offense.
On count one of the bill of information, possession of cocaine with intent to distribute, in addition to prison time and probation, the court fined the defendant $2,000. The court directed in default of payment of this fine, the defendant should serve eighteen months imprisonment. In accordance with La.C.Cr.P. art. 884, the maximum term of imprisonment for the failure to pay a fine is one year. We order that the time exceeding one year be deleted.

CONCLUSION
For these reasons, the conviction and sentence of Gerald Owens Bates is affirmed.
AFFIRMED.
NOTES
[1] The sentencing range of this statute was amended in 1994. The effective date of the amendment being August 27, 1994. The defendant was charged with having committed this offense on or about August 30, 1994. During sentencing, the D.A. incorrectly indicated the possible sentencing range from the former law.