742 So.2d 912 (1999)
STATE of Louisiana, Plaintiff-Appellee,
v.
John D. COOK, Defendant-Appellant.
No. 32,110-KA.
Court of Appeal of Louisiana, Second Circuit.
June 16, 1999.
*915 Peggy J. Sullivan, Louisiana Appellate Project, Monroe, Defendant-Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Susan E. Hamm, Assistant District Attorney, Counsel for Plaintiff-Appellee.
Before NORRIS, C.J., and BROWN and GASKINS, JJ.
NORRIS, Chief Judge.
After pleading guilty as charged to one count of molestation of a juvenile when the offender has control or supervision, La. R.S. 14:81.2, John D. Cook was sentenced by the district court to serve 15 years at hard labor without eligibility for good time diminution as a sex offender pursuant to La. R.S. 15:537. Cook now appeals, urging several assignments of error. For the reasons expressed, we affirm.

Facts and Procedural History
On March 3, 1997, then 27 year old Cook was in the shed behind his sister's house in West Monroe, Louisiana with his four year old niece. Shortly thereafter, defendant's niece told her mother that "Uncle John" had a big "ding ding" and when asked how she knew, the young girl said that defendant had shown it to her. Further questioning of the victim by her parents disclosed that Cook had placed his fingers and mouth on his niece's genitals. The niece also indicated in her own juvenile terms that she had witnessed defendant ejaculate. A follow-up video interview by a West Monroe Police Department detective and an employee of Child Protective Services as well as an examination by Dr. Meade O'Boyle confirmed the child's story that she had been molested.
Cook was subsequently arrested and charged by bill of information with one count of molestation of a juvenile when the offender has control or supervision. Thereafter, he entered a "best interest" plea under North Carolina v. Alford, 400 *916 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to that charge on July 15, 1998 pursuant to an agreement by the State not to file an habitual offender bill based on defendant's two prior felony sex convictions, both involving juveniles. Upon accepting the plea as knowingly, intelligently, and voluntarily entered and as being in defendant's best interest, the court ordered a pre-sentence investigation report ("PSI") and set the matter for sentencing.
Prior to sentencing, defendant filed a pro se motion requesting a change of counsel and a stay of his sentencing based upon allegations that his court appointed attorney, Jay Nolen, had given ineffective assistance of counsel in suggesting Cook plead guilty pursuant to the State's offer. The court held a hearing on that motion on August 27, 1998, the same day upon which sentencing had been scheduled, and after hearing testimony from Nolen, defendant's court appointed attorney, Mike Courteau, an attorney he consulted prior to his arrest, and defendant, the court denied the motion. Cook then immediately requested an oral motion to withdraw his previously entered plea, on the same grounds. Relying on the evidence presented at the hearing of the previous motion, the district judge also denied that request. The court then sentenced defendant to the maximum term of punishment of 15 years hard labor and additionally denied Cook eligibility for good time diminution of sentence pursuant to La. R.S. 15:537.
Following denial of a timely motion for reconsideration of sentence, Cook filed this appeal urging assignments of error relative to the trial court's failure to grant his motion to change counsel and stay execution of sentence, the trial court's failure to grant his request to withdraw his guilty plea, and excessiveness of sentence.

Discussion: Motion to Change Counsel and Stay of Execution
By his second assignment of error, Cook contends that the trial court erred in denying his pro se motion for Change of Counsel and Stay of Execution of sentence based on his alleged claims of ineffective assistance of counsel. We disagree.
While a defendant has a right to counsel of his choice, this right cannot be manipulated to obstruct the orderly procedure of the court and it must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage of the proceedings. State v. Anderson, 29,282 (La.App.2d Cir.6/18/97), 697 So.2d 651; State v. Woodman, 28,004 (La.App.2d Cir.1/24/96), 666 So.2d 1255, writ denied, 96-0489 (La.5/3/96), 672 So.2d 696, and authorities therein. Likewise, in the absence of an adequate showing that the court-appointed attorney is inept or incompetent to represent the defendant, the trial court cannot be called upon to appoint other counsel than the one originally appointed merely to please the desires of the indigent defendant. State v. Thomas, 28,790 (La.App.2d Cir.10/30/96), 683 So.2d 1272, writ denied, 96-2844 (La.4/25/97), 692 So.2d 1081; State v. O'Neal, 501 So.2d 920 (La.App. 2d Cir.), writ denied, 505 So.2d 1139 (La.1987).
A motion for continuance is within the sound discretion of the trial judge. La.C.Cr.P. art. 712; State v. Butler, 25,563 (La.App.2d Cir.1/19/94), 631 So.2d 22. Absent a showing of prejudice, a trial court's denial of a motion seeking a continuance of a post-trial criminal proceeding will not be disturbed on appeal. State v. Woodman, supra; State v. Butler, supra; State v. Gibson, 628 So.2d 156 (La.App. 2d Cir. 1993).
In alleging ineffective assistance of counsel, a defendant must satisfy a two-pronged test by showing, first, his attorney's performance to be so deficient as to deny him the "counsel" guaranteed by the Sixth Amendment, and second, that those errors are so serious as to deprive the accused of a fair proceeding, i.e. one with a reliable result. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Washington, 491 So.2d 1337, 1339 (La.1986). In order to prevail *917 under the Strickland test, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. State v. Jones, 29,805 (La.App.2d Cir.9/24/97), 700 So.2d 1034; State v. Gipson, 28,113 (La.App.2d Cir.6/26/96), 677 So.2d 544, writ denied, 96-2303 (La.1/31/97), 687 So.2d 402. Also, a reviewing court must give great deference to the defense attorney's judgment, tactical decisions, and strategy, strongly presuming that the conduct of counsel falls within the wide range of reasonable professional assistance. State v. Gipson, supra; State v. Dixon, 25,671 (La.App.2d Cir.1/19/94), 631 So.2d 94.
Ineffective assistance of counsel claims normally are raised in a petition for post-conviction relief. However, where the record contains evidence sufficient to resolve the issue and the alleged ineffectiveness is raised on appeal, the issue may be considered by an appellate court in the interest of judicial economy. State v. Seiss, 428 So.2d 444 (La.1983); State v. Jones, supra; State v. Gipson, supra.
In his original motion and again on appeal, defendant contends that his counsel, Nolen, failed to investigate witnesses and another possible suspect. He also maintains that Nolen had a conflict of interest in that he believed Cook to be guilty and thus, failed to give adequate advice regarding whether the plea was in defendant's best interest. On August 27, 1998, the trial court conducted a hearing on defendant's motion and considered his claims.
After waiving his attorney-client privilege, defendant called Nolen as his first witness. Regarding defendant's claim that Nolen failed to adequately investigate alleged defense witnesses, Nolen testified that he did review a list of witnesses that defendant gave him and conducted a proper investigation. In particular, Nolen noted that defendant's contention that he had "alibi" witnesses was not valid as Cook lived at the location of the offense and there was no question that he was present working on his automobile when the offense occurred. Additionally, the attorney explained that he had not spoken with a number of the provided witnesses because they were either not present when the incident occurred or because, based on what defendant expected them to say, their testimony would not be admissible at trial. One such witness, according to Nolen, was a local used car dealer who would merely be able to state that he had seen the child raise her dress on several occasions and in his opinion the four year old victim "would make a good whore when she grew up."
Regarding the nature of the investigation conducted, Nolen stated that he interviewed defendant's mother extensively as she was present at the time of the incident. It was his opinion that she would neither help nor harm Cook's case. Nolen further indicated that he did not interview the victim's sister, J.B., who was present at the time of the alleged incident. The attorney stated that he took this course of action because J.B. was only seven years old and he had in his possession her previously recorded statement that she said nothing had happened. Indeed, the State had provided Nolen with full "open file" discovery, including some witness and victim statements that it was not obligated to provide. The attorney indicated that he had reviewed all of the discovery information, that given to him by defendant, and notes written in the file by the attorney previously appointed in this matter. Finally, Nolen testified that he had not interviewed other witnesses on the list because defendant decided to plead guilty. However, had the matter gone to trial, he was prepared to have an investigator find and interview them.
When questioned about the possibility of another suspect, Nolen responded that Cook had informed him that the victim's father, Bruce, had a prior conviction for raping a daughter from a prior marriage. Yet, Nolen stated that he made a thorough search of the Ouachita Parish clerk of *918 court's records from 1984 until the present but he was unable to find such a conviction for the victim's father.[1] Nolen further stated that he informed the prosecutor of this information but was told that Bruce was not a suspect.
As to defendant's allegations of an alleged conflict of interest due to an opinion that defendant was guilty, Nolen testified that this was absolutely false. Nolen noted that defendant maintained his innocence and that he never told defendant that he thought he was guilty. In fact, the attorney noted that he would take the matter to trial if defendant desired. Nonetheless, he told defendant he felt it was in his best interest to take the plea based on the total situation. In particular, he explained to defendant that the State had given notice of its intent to conduct a Prieur hearing and his opinion, based on past experience, that it was highly probable the State would succeed in its effort to allow admission of defendant's previous convictions for juvenile sex offenses at trial. Nolen stated that based on his experience in similar situations he told Cook it was his professional opinion that he could not conceive of a judge or jury acquitting defendant once the Prieur evidence was introduced against him. The State had also provided Nolen with letters from other family members who claimed to have been molested by Cook. Nolen also noted that he explained to defendant that as a twice convicted violent felon he would be exposed to a mandatory life sentence without benefit of probation, parole, or suspension of sentence if convicted and the State filed an habitual offender bill against him. The prosecutor stated she would do so if defendant rejected the plea offer. Nolen further clarified that he told defendant the plea bargain would not get any better but never refused to investigate the case if Cook rejected it.
Cook testified on his own behalf. Initially, he indicated that Nolen's comments made him feel that Nolen believed he was guilty, particularly by telling him that he would be found guilty and the State would file an habitual offender bill against him each time Cook said he wanted to proceed to trial. Cook also felt Nolen should have at least interviewed some of his witnesses even though he admitted respecting Nolen's decision regarding other witnesses. Defendant further stated that he could not make an informed decision because he was never able to confirm via his own research what Nolen had told him about the Prieur hearing. Nonetheless, upon questioning by the court, defendant conceded that he fully understood what he was doing when he pled guilty and the rights explained by the judge, particularly admitting knowledge of them based on his own research while in jail and his prior two guilty pleas. Cook also did not express any complaints with the service of counsel when specifically asked at his plea on the instant offense whether he was satisfied with the representation.
The State called only one witness at the hearing regarding the motion to change counsel, Mike Courteau, the managing attorney for the Indigent Defender Board. He testified that defendant had come to his office seeking to retain his services as Courteau had previously represented Cook. Contradicting allegations in defendant's motion and statements at the hearing, Courteau denied ever telling Cook that the only thing a court-appointed attorney was good for is getting you a good plea bargain.
At the end of the hearing, the court found defendant's allegations to be baseless and false upon considering the evidence presented and the court's recollection of defendant's guilty plea colloquy. The trial judge concluded that defendant's motion was simply to delay his sentencing.
Based on the record before us, we do not find that defendant has met his burden of proving either element of the Strickland criteria for showing ineffective assistance *919 of counsel. Indeed, the record shows that defense counsel acted prudently and professionally in conducting his investigation and evaluating potential witnesses and the alleged other suspect. Furthermore, in light of the State's potential case as shown by the tendered discovery documents, the Prieur evidence issues, and defendant's habitual offender status, we find no deficiency in Nolen's advice that acceptance of the State's generous plea offer was in defendant's best interest to avert a likely conviction and life sentence. Cook's contention the advice was based simply upon Nolen's belief he was guilty is simply unsubstantiated. Moreover, there is absolutely no showing that Nolen's acts, even if deficient, changed the outcome of the proceedings. This is particularly true in light of his extensive plea colloquy with the trial judge and admission that he fully understood what he was doing in pleading guilty. Indeed, by pleading guilty to the charge, defendant considerably reduced his sentencing exposure.
Accordingly, in the absence of Cook showing that defense counsel acted ineptly or incompetently in pursuing his case, we find no error in the lower court's decision to deny his motion to change counsel after his guilty plea and prior to sentencing. See, State v. Harper, 381 So.2d 468 (La. 1980); State v. Dixon, supra; c.f., State v. Calhoun, 96-0786 (La.5/20/97), 694 So.2d 909. Neither do we find error in the lower court's conclusion that the instant motion was merely intended as a delay tactic. The court did not abuse its sound discretion in denying defendant's motion to continue his sentencing. Simply put, this assignment is without merit.

Motion to Withdraw Guilty Plea
By his third assignment of error, defendant contends that the trial court should have allowed him to withdraw his guilty plea. Relying on the same contentions relative to his failed motion to appoint new counsel, defendant contends that he was not fully informed of the consequences of his plea and the strength of the State's case and that the plea was not intelligently made. In other words, he would not have pled guilty but for the deficient actions of his attorney.
La.C.Cr.P. Art. 559 permits a court to allow a defendant to withdraw a guilty plea before sentencing. The discretion to allow withdrawal of a guilty plea lies with the trial court and such decision cannot be disturbed unless an abuse or arbitrary exercise of that discretion is shown. State v. Bates, 29,252 (La.App.2d Cir.1/22/97), 711 So.2d 281; State v. Wilson, 482 So.2d 923 (La.App. 2d Cir.1986). A defendant has no absolute right to withdraw a guilty plea. State v. Bates, supra; State v. Essex, 618 So.2d 574 (La.App. 2d Cir.1993).
Generally, a denial of withdrawal of a guilty plea will not be reversed on appeal when the record clearly shows that the defendant was informed of his rights and the consequences of the plea and that the plea was entered voluntarily. State v. Griffin, 535 So.2d 1143 (La.App. 2d Cir.1988). When ruling on a motion to withdraw a guilty plea, the trial court should look beyond the Boykinization and consider all relevant factors. State v. Griffin, supra; State v. Potts, 554 So.2d 117 (La.App. 2d Cir.1989). A court, when called upon to ascertain an accused's state of mind, has the power, notwithstanding a record waiver of constitutional rights, to determine whether other factors present at the time of the guilty plea, whether inside or outside of the plea colloquy record, were sufficient to render the plea involuntary or unintelligent. Id.
Reasons supporting the withdrawal of a guilty plea would ordinarily include factors bearing on whether the guilty plea was voluntarily or intelligently made, such as a breach of a plea bargain, inducement, misleading advice of counsel, strength of the evidence of actual guilt or the like. A mere change of heart or mind by the defendant as to whether he made a good bargain will not ordinarily support *920 allowing the withdrawal of a bargained guilty plea. State v. Griffin, supra. Without fraud, intimidation or incompetence of counsel, a guilty plea is not made less voluntary or informed by the considered advice of counsel. State v. Bates, supra. Also, misunderstandings between the defendant and his defense counsel do not render a guilty plea involuntary. State v. Johnson, 95-626 (La.App. 3d Cir.12/13/95), 666 So.2d 1137, writ denied, 96-0156 (La.4/19/96), 671 So.2d 925.
The instant record reveals that the trial court conducted an extensive colloquy with defendant, one that went well beyond that required by the jurisprudence. Not only did the judge inform Cook of his three Boykin rights and ascertain that they were fully understood, but he also informed Cook of various other consequences of the plea and asked thorough questions of Cook and counsel to determine that defendant understood the proceedings and that the plea was in Cook's best interest under Alford. Regarding the possible sentence, the court informed Cook of the sentencing range as well as questioned him about it, eliciting responses that show defendant was fully aware of it and had discussed it with his attorney. The court also explained the plea's effect on Cook's appeal rights which Cook answered that he completely understood, even noting he would generally be limited to appealing his sentence.
Equally important, the court specifically asked counsel if he had discussed with Cook all aspects of the case, including the strength of the State's case, the possible sentencing exposure as a habitual offender, the sex offender registration requirements, and the elements of the statute of conviction. Nolen replied affirmatively, and Cook, when questioned, confirmed this, indicating he was completely satisfied with the representation, and felt the plea, based on counsel's presentation of the case, would be in his best interest. Cook stated that he had not been coerced into making the plea. Consequently, based on his very comprehensive colloquy and the record before him, the district judge concluded that the plea was in defendant's best interest and that it was knowingly and voluntarily made.
At the time of defendant's motion to withdraw his plea, the trial court noted the extensive plea colloquy that it had conducted with defendant as well as the evidence presented on the motion to change counsel. The court also recognized that defendant had pled guilty on two prior occasions and had additionally educated himself in prison regarding his rights and other aspects of criminal law. As a result, the court denied defendant's motion to withdraw, finding defendant's plea to have been informed and voluntary.
On this record, we find no abuse of discretion or arbitrary action in the district court's refusal to allow Cook to withdraw his guilty plea. As previously discussed in the prior assignment, defendant failed to show that his guilty plea was involuntarily or unintelligently entered based on any ineffective assistance of counsel. Indeed, defendant benefitted substantially from the plea bargain, a factor that should be considered in evaluating a request to withdraw a plea. See, State v. Curtis, 28,309 (La.App.2d Cir.8/21/96), 679 So.2d 512, writ denied, 96-2322 (La.2/7/97), 688 So.2d 496. As evidenced by defendant's testimony at the motion hearing, any problems likely resulted from a misunderstanding of counsel's advice. Moreover, the excellent and lengthy plea colloquy by the trial court clearly shows that defendant understood his rights as well as the consequences of his plea. This assignment is also without merit.

Excessive Sentence
By his first assignment, Cook contends that the district judge erred in denying his motion to reconsider sentence and in imposing an unduly harsh and excessive sentence.
In reviewing claims of excessiveness, an appellate court uses a two-pronged *921 analysis. First, the record must show that the district court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The court is not required to list every aggravating or mitigating circumstance, as long as the record shows an adequate consideration of the guidelines. State v. Smith, 433 So.2d 688 (La.1983); State v. Adger, 30,215 (La.App.2d Cir.12/10/97), 707 So.2d 1000. The objective of article 894.1 is the articulation of a factual basis for sentence, and not rote recitation of the guidelines. When the record clearly shows an adequate factual basis for sentence, remand is not necessary. State v. Lanclos, 419 So.2d 475 (La. 1982); State v. Adger, supra.
The second prong is constitutional excessiveness. A sentence violates La. Const. Art. I § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is deemed grossly disproportionate if, when the crime and punishment are weighed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Adger, supra. Generally, maximum sentences are reserved for the most serious incidents of the offense and the worst type of offenders. State v. Lathers, 444 So.2d 96 (La. 1983); State v. Delaughter, 29,974 (La. App. 2 Cir. 12/10/97), 703 So.2d 1364, writ denied, 98-0018 (La.5/1/98), ___ So.2d ___, 1998 WL 234691. Nonetheless, a district court has wide discretion to sentence within the statutory limits, and such a sentence will not be set aside as excessive absent a manifest abuse of that discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Lindsey, 28,016 (La.App.2d Cir.4/3/96), 671 So.2d 1155. In selecting a proper sentence, the trial court is not limited to considering only the defendant's prior convictions but may properly review all prior criminal activity. State v. Delaughter, supra; State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991).
In the instant case, the sentencing judge ordered and reviewed the PSI prior to sentencing. The judge also reviewed various letters that had been given to him by defense counsel on defendant's behalf. In setting forth the factual basis for his sentence, the court noted that defendant was not a youthful offender and considered his social history. The court repeatedly referred to Cook's two prior felony convictions involving sex offenses against juveniles and once noted a misdemeanor trespass conviction. Defendant's first felony offense was for molestation of a juvenile on January 5, 1990 for which he received a suspended five year hard labor sentence and five years probation; his second felony offense was for sexual battery on August 5, 1991, resulting in a seven year hard labor sentence and revocation of his prior probation. The court observed that Cook was on parole when he committed the instant juvenile sex offense.
In addition to his prior record, the court considered that other individuals had sent letters to the prosecutor relating how defendant had molested them as children and how they hoped he would not be able to do this to others. Yet, the court further stated that it did not let a recent report indicating Cook had likely molested the instant victim's sister influence the sentencing decision. Instead, the judge indicated he was most influenced by the molestation of the four-year-old victim, noting defendant's mother allowed him into her home and he took advantage of the situation by molesting yet another child. The court also considered the age of the child, the long lasting trauma inflicted upon the victim, and defendant's status as the victim's uncle and family member.
In its final analysis, the district court concluded that defendant's conduct was likely to be repeated and posed a serious threat to other children, particularly in view of his failed probation and *922 parole. Finding no mitigating circumstances, the court found a lengthy incarceration to be the appropriate punishment. Importantly, the court recognized that defendant benefitted greatly from his plea in that he was able to avoid an extensive jail sentence, including a possible life term without benefit of probation, parole, or suspension of sentence, through the condition that the State would not charge him as an habitual offender. Indeed, where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430; State v. Hamburg, 535 So.2d 915 (La.App. 2d Cir.1988).
The trial court clearly set forth an adequate factual basis for its sentence. In light of the circumstances cited by the trial court and found in the instant record, Cook's sentence to the maximum term of incarceration for molestation of a juvenile when the offender has control or supervision is not excessive. Cook, a recidivist child molester, can clearly be classified as the worst type of offender committing the most serious violation of this offense. Moreover, under La. R.S. 15:537, the trial court is given discretion to deny diminution of sentence for good behavior in cases involving convictions for sexual offenses. See, State v. Mickens, 31,737 (La.App.2d Cir.3/31/99), 731 So.2d 463.
In sum, this 15 year hard labor sentence without benefit of diminution for good behavior for this repeat sex offender does not shock our sense of justice. See, State v. Delaughter, supra; State v. Grissom, 29,718 (La.App.2d Cir.8/20/97), 700 So.2d 541. Therefore, it is not excessive.

Conclusion
For the reasons expressed, Cook's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Nolen testified that Cook told him Bruce's conviction was in Ouachita Parish.