818 So.2d 289 (2002)
STATE of Louisiana, Appellee,
v.
Roderick IRVING, Appellant.
No. 35,795-KA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 2002.
*290 Peter J. Black, Shreveport, Louisiana Appellate Project, by Amy C. Ellender, Baton Rouge, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, William Edwards, Assistant District Attorney, for Appellee.
Before WILLIAMS, KOSTELKA and DREW, JJ.
KOSTELKA, J.
After Roderick Irving ("Irving") pled guilty to armed robbery, La. R.S. 14:64, he was sentenced to eighteen years at hard labor without benefit of parole, probation or suspension of sentence. Irving now appeals claiming error in the denial of his motion to withdraw his guilty plea. We affirm.

FACTS
On the evening of November 10, 1998, Sheila Carey ("Carey") and her boyfriend, Eric Robinson ("Robinson"), along with three children and Carey's sister, were gathered at Carey's Shreveport, Louisiana home when three[1] armed and masked males forcibly entered the residence. After forcing the occupants of the home into a back bedroom and threatening and demanding money and drugs from Robinson, the men took approximately $1,300 from Robinson, three perfume bottles and sundry articles of clothing and tapes. After the men departed the home, Carey and Robinson exited the house in time to see a gray van moving away from the residence. At that time, they were also able to flag down a police officer who was traveling near the house. The police officer followed the van and apprehended Irving, the driver, as he ran from the van. By amended bill of information, the state *291 charged Irving with aggravated burglary and armed robbery.
During his jury trial, Irving agreed to plead guilty to armed robbery with an agreed-upon sentencing cap of twenty years without benefit of parole, probation or suspension of sentence in exchange for the state's agreement that he be allowed to remain on bond until sentencing. The agreement also provided that at the time of sentencing the state would dismiss other pending charges including the institution of habitual offender proceedings.[2] The guilty plea occurred on August 4, 1999, but due to his absence, Irving was not sentenced until April 24, 2001. Before sentencing, Irving filed a motion to set aside the guilty plea. The grounds asserted in the motion included his alleged innocence, his claim that he pled guilty only because his lawyer wanted him to, his lawyer's ineffective cross-examination of witnesses at trial and the dismissal of charges against his codefendants. After examining the guilty plea and hearing all of the testimony relating to it, the trial court denied Irving's motion to withdraw the plea finding that the record adequately showed Irving validly took the plea because he was afraid he would be found guilty after trial and then be sentenced as an habitual offender. This appeal ensued.

DISCUSSION
On appeal, Irving specifically argues that his trial counsel's ineffective cross-examination skills, i.e., failure to clear up confusing identification testimony by Carey and Robinson, effectively forced him to involuntarily plead guilty. Irving also urges this court to consider that a rift existed between Irving and his attorneys and the pressure-filled circumstances surrounding the plea.
Of course, it is well established that the entry of a guilty plea must be a free and voluntary choice. For a plea to be considered free and voluntary, the transcript must establish the defendant was informed of and waived his rights to trial by jury, to confront his accusers, and his privilege against self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Nuccio, 454 So.2d 93 (La.1984).
La.C.Cr.P. art. 559(A) provides that the court may permit a plea of guilty to be withdrawn at any time before sentencing. The withdrawal of a guilty plea before sentencing is discretionary with the trial court and is subject to reversal only if that discretion is abused or arbitrarily exercised. La.C.Cr.P. art. 559(A); State v. Nicholas, 30,104 (La.App.2d Cir.12/10/97), 704 So.2d 930; State v. Essex, 618 So.2d 574 (La.App. 2d Cir.1993). A defendant has no absolute right to withdraw a previously entered guilty plea. State v. Calhoun, 96-0786 (La.05/20/97), 694 So.2d 909; Nicholas, supra; Essex, supra.
Generally, the denial of a motion to withdraw a guilty plea will not be reversed on appeal when the record clearly shows the defendant was informed of his rights and the consequences of his plea and that his plea was voluntary. State v. Griffin, 535 So.2d 1143 (La.App. 2d Cir.1988).
Without fraud, intimidation or incompetence of counsel, a guilty plea is not made less voluntary or informed by the considered advice of counsel. State v. Bates, 29,252 (La.App.2d Cir.01/22/97), 711 So.2d 281. A mere change of heart or mind by the defendant as to whether he made a good bargain will not ordinarily support allowing the withdrawal of a bargained guilty plea. Griffin, supra. Also, misunderstandings between the defendant *292 and his defense counsel do not render a guilty plea involuntary. State v. Johnson, 95-626 (La.App. 3d Cir.12/13/95), 666 So.2d 1137, writ denied, 96-0156 (La.04/19/96), 671 So.2d 925.
Bare allegations of improper representation by counsel and that a plea was induced by threats, promises and intimidation will not support the withdrawal of a guilty plea, especially when the record shows that the guilty plea was made voluntarily and with a full understanding of the nature of the charges as well as the consequences of the plea. State v. Helsley, 457 So.2d 707 (La.App. 2d Cir.1984).
Irving makes no claim that he was improperly Boykinized. Indeed, the record before us demonstrates adequate Boykin advice.[3] Moreover, the record otherwise demonstrates an intelligent and voluntary waiver of those rights by Irving. On the second day of trial, Irving's attorneys informed the court of the state's plea offer but stated that Irving wished to reject the plea contrary to their advice that he should accept it due to the evidence against him and his potential sentencing exposure. Irving then requested more time to think about the offer; however, the court indicated that Irving must accept the offer or the trial would continue. Thereafter, Irving indicated to the court his intent to plead guilty.
The court granted a brief recess so that Irving could discuss the guilty plea with his attorneys. Once the proceedings reconvened, the terms of the plea agreement were stated for the record and the trial court personally addressed Irving as to the nature of the charge, his sentencing exposure, his right to trial by jury, his right to confront and cross-examine his accusers, and his right against compulsory self-incrimination.
The prosecutor recited the facts of the case indicating that Irving drove three individuals in a rented van to the residence of Eric Robinson where they burglarized the residence and robbed Eric Robinson while armed with weapons. Irving and those individuals fled in the van. Irving indicated that those facts were correct and that he was not coerced or forced into pleading guilty. After Irving indicated he did not have any questions, the trial court found that the plea was freely and voluntarily made.
At the hearing on the motion to set aside the plea, Irving testified. His main contention at the hearing was that his lawyer did not effectively cross-examine the witnesses. He also admitted that he pled guilty out of fear of the sentence he might receive if convicted at trial. He claimed that he never wanted to plead guilty but did so because he believed his counsel would not effectively defend him if he did not take the plea. Irving expressed a clear understanding of the circumstances surrounding the plea.
Although Irving initially disagreed with his attorneys' advice to accept the plea, we cannot conclude that this fact alone is adequate to demonstrate a breach in the relationship sufficient to invalidate the plea. In fact, it is equally arguable that Irving's ability to independently evaluate his situation otherwise supports the conclusion that his ultimate decision was not induced by counsel but was rather a considered and voluntary choice on his part. Morever, we cannot find that Irving has shown the circumstances attendant to the plea placed undue pressure on him *293 which resulted in an involuntary plea. Clearly, Irving's counsel discussed the plea in detail with him prior to the day of the plea. This certainly served to circumvent any element of surprise. In these circumstances, any evidence of emotional conflict exhibited by Irving at the time of his plea can be viewed in no other way than that which would be experienced by any defendant faced with the choice of admitting criminal culpability prior to the completion of trial or continuing the trial process. While certainly understandable, we cannot say Irving has shown that the pressure he faced was anything other than that which is inherent in the guilty plea process. Such emotional conflict fails to qualify as the type of coercion or intimidation necessary to invalidate a plea.
Likewise, the record fails to bear out Irving's claim that his counsel's ineffective cross-examination of the witnesses inappropriately induced his plea. The jury heard testimony showing the perpetrators were masked and that neither Carey nor Robinson could fully see their faces. Notably, this testimony was elicited in part from the witnesses on cross-examination. Moreover, the record shows that Irving's counsel also cross-examined both Carey and Robinson regarding their identification of Irving as one of the perpetrators after the van had been stopped. After a review of the record before us, we are satisfied that counsel's cross-examination of Carey and Robinson included an obvious attempt to point out the inconsistencies in the witnesses' identification of Irving as an assailant and admissions that they had not seen the perpetrators' faces. Accordingly, Irving's claim that improper representation by counsel unduly affected his choice to plead guilty is unfounded. Certainly, Irving was aware of the remaining independent evidence which showed his apprehension after he exited a van filled with items stolen from Carey's house. It is reasonable to conclude that it was this pronounced evidence of his guilt which precipitated the plea or as the trial court aptly observed, "[H]e was afraid that if he went to trial that he would be found guilty as charged and multi-[b]illed. So he pled guilty. That is a valid reason for a guilty plea." Without Irving's claims being supported by the record, it is also reasonable to conclude that his desire to withdraw his guilty plea resulted from his change of mind or fear that he did not make a good bargain. Such grounds do not support the invalidation of the plea. Accordingly, the assigned errors lack merit.
Therefore, Irving's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Carey recalled four men entering the home.
[2] Notably, Irving failed to appear for sentencing.
[3] Nor are we able, as one of Irving's appellate counsel contends, to discern ambivalence in Irving's waiver of his Boykin rights.