CARAWAY, J.
liOn October 16, 2014, Dean Hart pled guilty to resisting an officer with force or violence, aggravated battery and possession of cocaine. The plea occurred during the course of his bench trial for,,eight offenses. In accordance with a recommendation by the state recited during the plea negotiation, the court sentenced Hart to 10 years at hard labor for aggravated battery, concurrent to a sentence of three years at hard labor for resisting an officer, and consecutive to a suspended five year hard labor sentence for possession of cocaine. Hart now appeals arguing error in the trial court’s denial of his motion to withdraw his guilty plea and the invalidity of the factual basis for the aggravated battery conviction. We affirm.

Facts

The array of original charges filed against Hart[1] came about after his conduct) on the days following Christmas 2013. During the trial, before a plea agreement was reached, the state’s case presented evidence of the crimes.
Just after 5:00 a,m, on December 30, 2013, the Monroe Police Department (“MPD”) received a report from St. Francis Hospital that a |awoman had come in and reported being sexually assaulted. Corporal Collette Major responded to the emergency room where she met B.H. who told-her that she had been married to the defendant for three months, and that he had been holding her against her will in their home since Christmas.
. B.H. explained to the officers the various incidents in the previous days which began when the defendant learned that her former husband,' a physician who worked at the hospital, had given B.H. a cell phone in order to keep in touch with his daughter. B.H. stated that Hart was very -upset and told her they were going to drive to the hospital to confront the physician.
When the eouple arrived at the hospital, B.H. learned that her former husband was not on duty. She told Officer Major that the defendant told her, ‘You’re fixing to show me where [he] lives” and that they *600 got into the defendant’s car and began driving toward her former husband’s neighborhood. B.H. also stated that as she and Hart drove away from the hospital, she tried to get out of the car but “her husband grabbed her by the back of her hair twice pulling her back into the vehicle.” The officer observed that B.H. had two spots on the back of her head that looked like they were bald. B.H. told the officer this was the result of the hair pulling incident.
When B.H. and defendant drove around her ex-husband’s neighborhood, B.H. again tried to get out of the car, but, according to Officer Major, “he [Hart] grabbed her by the back of her head this time striking her head several times against the steering wheel.” B.H. reported that “about thirty minutes later she began to throw up and got a real bad | .-¡headache.” The officer confirmed that B.H. had discoloration to the left side of her forehead. B.H. also told the officer that the defendant was armed with a firearm during this episode. B.H. never told Hart where her former husband lived, so he drove the two of them back to their own home.
According to B.H., in response to a welfare call from B.H.’s sister, police visited Hart’s home the next day. B.H. told Officer Major that the defendant warned her that “if she told them something was going on or something was wrong that he would kill her.” B.H. was unable to communicate her situation to the police. B.H. also told the officer that the next day, her sister called to try to get her out of the house, but Hart would not let her leave.
On December 29, 2013, Hart and B.H. traveled to a local store. She was allowed to go into the store alone, while the defendant kept B.H.’s dog in the vehicle and threatened to kill both her and her dog if she told anyone about what was happening. When B.H. entered the store, she borrowed a cell phone from another shopper and called her ex-husband to report that she was scared of what was going on between her and the defendant. B.H. then returned to the car.
B.H. told the officer that when they returned home Hart ordered her into the bedroom, telling her that “you don’t know how to be a good wife, but tonight you’re going to do whatever I tell you.” B.H. said that the defendant then held her down on the bed by her wrists and forced her to have sex with him. Defendant eventually fell asleep. B.H. then found the place where the defendant had hidden her car keys and she took her dog and Rdrove to St. Francis hospital. The officer observed reddish color bruises on B.H.’s arms and legs. B.H. told the officer that her husband was responsible for all of these injuries. In addition, B.H. had a bite mark on one breast which she claimed occurred when the defendant raped her.
MPD Sergeant James Booth also responded to the hospital and took a detailed statement from B.H. Like Officer Major, Booth also observed bruises on B.H.’s head and arms which B.H. attributed to the defendant. Sgt. Major said that B.H. likewise told him the above events began on December 26, when Hart threatened to Mil B.H. and her ex-husband. Officer Booth also reported that B.H. said that Hart refused to let her leave their home for the next two days and, on the 29th, ordered her out of the bathtub and forced her to have sex with him.
As a result of B.H.’s report, Monroe police dispatched the MPD Special Response Team (“SWAT”) to Hart’s home. MPD Officer Albert Edminston, the SWAT sniper, responded as a part of the team. He reported that at 7:21 p.m., he observed a red laser sweeping the area where he and the other team members were located. The officer was concerned *601 that the laser was associated with a weapon. At 8:12 p.m., Edminston saw the defendant inside the house turning off lights and reported that the defendant “still had the red laser” and was aiming it at the front door area. Because he was not equipped with night vision gear, the officer could not tell whether the defendant had a gun in his hand.
Hart was eventually apprehended and a search warrant was obtained for his home. Among other items, the officers recovered an AR-15 rifle |swith an attached flashlight, a Ruger revolver with an integral laser sight, and some cocaine.
At trial, B.H. repudiated many of the statements she made to police. She stated that her head injury happened because “I was just not thinking clearly and overreacted.” She testified that as she tried to open the door of the car and Hart pulled her back in, “somehow I hit my head somewhere between the mirror and the steering wheel.” She further testified that all of the sexual encounters she had with the defendant were consensual and that her earlier statement to the contrary was made because she was “acutely traumatized and had a head injury.” She claimed that she “was not thinking clearly,” “was not rational,” and “overreacted.”

Proceedings for Guilty Plea

Ultimately, rather than continue the trial, the state and Hart reached a guilty plea agreement recited into the record, as follows:
Judge, we have an amended bill of indictment on the way over here. The amendment we’re going to make on the bill of indictment, we’re going to amend count six, the forcible rape charge, to aggravated battery. And we’ve reached an agreement as far as a plea in this matter, we are going to allow the defendant to plead guilty to count four, resisting an officer with force or violence, count six, aggravated battery, and count eight, possession of cocaine. We’re going to amend count five the kidnaping to, I mean, the aggravated battery. So he’ll plead to the aggravated battery, resisting by force and possession of cocaine. And the recommendation to the court on this matter would be that on the aggravated battery, he’s to receive a ten year hard labor sentence. On the resisting force by violence, that he receive a three year hard labor sentence. Both sentences on those two counts would be running concurrent. On the possession of cocaine, he would receive a five year hard labor sentence that would run consecutive to the previous two charges and sentences. That five year hard labor sentence would be suspended and he would be placed on a three year supervised probation.
IfiThe ensuing plea colloquy was exhaustively thorough. Among other things, the plea reflects that Hart was also facing pending charges in the state of Arkansas and evidently was in custody in that state for some time.. The trial court explained:
Court: Now in addition to the crime that you’ll plead to and the number of years and the concurrent and consecutive issues, there are some other things that I need to tell you that I have agreed to and that is to give you credit for time served for all time you’ve served on this arrest and the lawyers — it wasn’t in my notes originally, apparently have also agreed to whatever time you spent in jail in Arkansas up to this point would be credited to you as well. And I have no objection to you serving your sentence here in Louisiana. Whatever happens in Arkansas I can’t judge what will happen up there. But the ■ court has no objection to any sentence *602 that you may receive for the Arkansas events being served here in Louisiana.
Defendant: Yes, sir.
Court: Now has anything else and I want to know this before I go any further, has anything else beén promised to you in return for your plea?
Defendant: It’s just my understanding what whatever I Receive irt Arkansas Will run concurrent with Louisiana.
Court: Concurrently, yes.
Defendant: Yes, sir, that’s all.
Court: Well, let me say this. I have no objection to it running concurrently—
Defendant: Right, yes, sir.
Court: — with Louisiana.
Defendant: I know you’re not in control .... I know you’re not in control of Arkansas, but whatever I receive it runs concurrent with Louisiana.
|7Court: To the extent that this court can make it happen it will.
Defendant: Okay, fair enough.
Court: That’s the. best I can tell you.
Defendant: Yes, sir. Thank you.
The court explained and Hart agreed that he understood the rights he was giving up under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Notably, this exchange also occurred:
Court: Now, sir, the other thing'is this. When you plead guilty to- an agreed . plea and sentence, you do not have the right of .appeal. Do you understand?
Defendant: Yes, sir. • •
Court: That is provided that toy sentence is true to what you agreed with and it will be. Do you understand that?
Defendant: Yes, sir. .
Regarding the defendant’s plea to aggravated battery, the court explained to the defendant:
Court: For purposes of facilitating this plea agreement, the steering wheel which yóur wife indicated that you caused her to have her head make contact is not normally thought of as a dangerous weapon. But considering the observable injury caused, I think that it fairly fits the definition. And in order to make this plea work that your lawyers were working out for you, the court is comfortable with proceeding on the basis that it amounts to a dangerous weapon. Do you understand what I’m saying?
Defendant: Yes, sir.
Hart thus entered an unqualified plea of guilty to all three offenses.
■ | ^Proceeding to Withdraw Plea
Prior to sentencing, Hart enrolled new counsel who filed 'a motion to withdraw the guilty plea[2] and request a continuance. When the motion was argued, counsel stated:
[A]s noted in our motion, you can see that we were requesting a continuance to be able to file memoranda and to also perhaps obtain certain affidavits and investigation. The issue, which I think is clearly-, more than a — this is not a change of heart issue where Mr. Hart is — no pun intended — changing his mind so to speak where he has sat and had a few hours in the jail and determined that was not what he wanted. This in fact revolves around an important legal issue that has to do with his — the matter *603 that he had pending in Arkansas.- This morning we had an opportunity to watch the video for the plea colloquy and the Boykin examination that the Court had with the defendant, and throughout the entire time the only question when Your Honor asked him if he had — if there were (sic) anything outside of what was explained to him both by the Court and in open court, the only issue that he raised was,, of course, his concern for whether the time that he was going to do, in Arkansas would run concurrent with the time here. The issues raised in Arkansas.
Hart’s new counsel argued that Hart was not fully aware of the consequences of the then-unresolved case in Arkansas when he entered his plea in Louisiana and that the former Louisiana attorneys may not have provided ineffective advice but may have provided misleading advise.[3] He contended that Hart “was clearly advised that it would be likely that he would be doing more time over there and that this was the' throwaway case.”
| ¡After further extended argument, the court concluded that the defendant had received exactly what he bargained for, namely, the dismissal of several charges including the most severe charge of forcible rape and the exact sentence that was promised to him when he pled guilty. The court found that the plea was in Hart’s best interest and refused to continue the matter. The court observed, among many other things, that:
The Court is of the view that the outcome perceived by counsel for Mr. Hart in this matter was a favorable outcome. I don’t see where they fell down on the job, at least not in my court for sure. I don’t know what conversation there was about Arkansas, but-1 do know what they did in. fighting the fight at the trial in my court and frankly I don’t see any ineffective assistance of counsel on their part. Now, I realize that is a post-conviction relief kind of issue to deal with but I’m dealing.with it now because I have to deal with the matter today. The motion.is denied.
The court then imposed the sentences, as agreed upon by Hart as part of his guilty plea. The defendant filed a motion for appeal, which the trial court initially denied but subsequently granted, and the case is now before this Court.

Discussion

In his first three assigned errors, Hart argues that the trial court erred in denying his motion to withdraw the guilty plea, have an evidentiary hearing in support thereof and for continuance. These three assignments are considered together as they all concern the -trial court’s handling and disposition of Hart’s motion - to withdraw his guilty plea.
A guilty plea is invalid when the defendant is induced to plead guilty by a plea agreement or by what the defendant reasonably believes is a plea agreement and the terms of the bargain are not satisfied. State v. Holmes, 475 So.2d 1057 (La.1985); State v. Banks, 49,767 (La.App.2d Cir.4/15/15), 163 So.3d 895; State v. Jones, 546 So.2d 1343 (La.App. 3d Cir.1989).
 When a defendant seeks to withdraw a guilty plea and the record establishes that he was,informed of and-waived his right to trial by jury, to confront his accusers and against self-incrimination, the burden shifts to the accused to prove that, *604 despite this record, his guilty plea was involuntary. State v. Wooten, 49,710 (La.App.2d Cir.4/15/15), 164 So.3d 937; State v. Martin, 48,045 (La.App.2d Cir.5/15/13), 115 So.3d 750. Where a defendant’s misunderstanding is not induced by or attributed to representations made by the district attorney or the trial court, there are generally no grounds for withdrawal of the plea. Wooten, supra; Martin, supra; State v. Hall, 637 So.2d 645 (La.App. 2d Cir.1994), writ denied, 94-1373 (La.9/30/94), 642 So.2d 868.
La.C.Cr.P. art. 559 provides, in part:
A. Upon motion of the defendant and after a contradictory hearing, which may be waived by the state in writing, the court may permit a plea of guilty to be withdrawn at any time before sentence.
The discretion to allow withdrawal of a guilty plea under Article 559(A) lies with the district court and such discretion cannot be disturbed unless an abuse or arbitrary exercise of that discretion is shown. State v. Calhoun, 96-0786 (La.5/20/97), 694 So.2d 909; State v. Harris, 43,069 (La.App.2d Cir.3/19/08), 980 So.2d 174; State v. Cook, 32,110 (La.App.2d Cir.6/16/99), 742 So.2d 912. A defendant has no absolute right to withdraw a guilty plea. Id. Generally, the denial of withdrawal of a guilty |nplea will not be reversed on appeal when the record shows the defendant was informed of his rights and the consequences of the plea and that the plea was entered voluntarily. Harris, supra. However, when ruling on a motion to withdraw a guilty plea, the district court can look beyond the Boykinization and consider all relevant factors, such as the breach of a plea bargain, inducement, misleading advice of counsel, strength of the evidence of actual guilt, or the like. Harris, supra; State v. Burnett, 33,739 (La.App.2d Cir.10/4/00), 768 So.2d 783, writ denied, 00-3079 (La.11/2/01), 800 So.2d 864. The defendant’s change of heart does not usually render a guilty plea involuntary. Id.
Misunderstandings between the defendant and his defense counsel do not render a guilty plea involuntary. Burnett, supra; State v. Johnson, 95-626 (La.App. 3d Cir.12/13/95), 666 So.2d 1137, writ denied, 96-0156 (La.4/19/96), 671 So.2d 925. Bare allegations of improper representation by counsel and that a plea was induced by threats, promises and intimidation will not support the withdrawal of a guilty plea, especially when the record shows that the guilty plea was made voluntarily and with a full understanding of the nature of the charges as well as the consequences of the plea. Burnett, supra; State v. Greer, 572 So.2d 1166 (La.App. 1st Cir.1990). When a motion to withdraw a plea is made prior to sentencing, a court may hold an evidentiary hearing, but is not required to do so. Id.
A court, when called upon to ascertain an accused’s state of mind, has the power, notwithstanding a record waiver of constitutional rights, to determine whether other factors present at the time of a guilty plea, whether | ^inside or outside the plea colloquy record, were sufficient to render the plea involuntary or unintelligent. State v. Galliano, 396 So.2d 1288 (La.1981); State v. Lewis, 421 So.2d 224 (La.1982); State v. Griffin, 535 So.2d 1143 (La.App. 2d Cir.1988).
Applying this law to the facts of this case, we find that Hart’s reasons for withdrawal of his Louisiana plea are too attenuated to require the trial court to find the plea was involuntary or unintelligently made or to conduct further inquiry via an *605 evidentiary hearing.[4] A review of the court’s Boykin colloquy with Hart reveals an unusually thorough explanation of Hart’s constitutional rights as well as an articulated waiver of those rights by Hart in exchange for the substantial reduction in his sentencing exposure. Notably, at the time he pled guilty, the defendant was well aware of the strength of the state’s case against him in Louisiana because he entered his plea after a number of witnesses had already testified about their observations of the defendant’s actions and about the victim’s original statements and physical injuries. See La. C.E. art. 801 D(1); State v. Rankin, 42,412 (La.App.2d Cir.9/19/07), 965 So.2d 946, writ denied, 07-2067 (La.3/7/08), 977 So.2d 897.
Hart faced conviction and sentencing exposure for eight charged offenses had he proceeded through trial.[5] Thus, by pleading guilty, Hart very substantially reduced his exposure to incarceration in Louisiana and avoided a potential guilty verdict on the forcible rape and kidnaping 1 i3charges. The benefit a defendant receives from a plea bargain is a relevant factor in the context of a motion to withdraw the plea to determine whether the plea was knowingly and intelligently entered.[6] Cook, supra; State v. Curtis, 28,-309 (La.App.2d Cir.8/21/96), 679 So.2d 512, writ denied, 96-2322 (La.2/7/97), 688 So.2d 496.
Ultimately, Hart’s argument for invalidation of the plea is that he would not have pled guilty in Louisiana had he known he would not serve an extended term of incarceration for his actions in Arkansas. Yet, the record shows that at the time of the plea, Hart failed to discuss with the court any concern that he had about the sentence he. would get in Arkansas. Rather, Hart voiced his desire only that the sentence for the Arkansas offense be imposed concurrently with the sentences for the Louisiana offenses, acknowledging that the Louisiana judge was not in control of the Arkansas proceedings. At the time Hart pled in Louisiana, the Arkansas proceedings had not been concluded.[7] Even so, Hart expressed no concern over the terms of his Louisiana sentence at the guilty plea, focusing instead on whether any imposed sentence would be served concurrent to his Louisiana punishment and he would receive a credit to the Louisiana sentence for any time previously served in Arkansas.
In light of the perfectly clear Boykin colloquy and the benefit Hart actually received from his Louisiana plea bargain, we find no abuse of discretion in the trial court’s determination that Hart’s “hindsight” 1 i4arguments about the disposition of his Arkansas criminal case did not require either invalidation of the plea or further inquiry. For these reasons, these three assignments of error are without merit.
Finally, Hart argues that his plea to aggravated battery cannot be allowed to stand because the factual basis for this offense does not support the charge. In particular, he urges that the steering wheel of his car cannot be considered a *606 dangerous weapon for purposes of proof of that element of aggravated battery.
The defendant’s guilty plea to aggravated battery came about as a part of the plea agreement where the state agreed to substitute a lesser charge instead of the forcible rape and kidnaping charges. As this Court explained in State v. Yates, 41,247 (La.App.2d Cir.9/27/06), 940 So.2d 147, 150-51:
There is no requirement that a guilty plea be accompanied by the recitation of a factual basis for the crime. State v. Wynne, 40,921 (La.App.2d Cir.4/12/06), 926 So.2d 789 citing State v. Griffin, 633 So.2d 358 (La.App. 1st Cir.1993), writ denied, 94-0240 (La.10/14/94), 643 So.2d 157. “[T]he due process clause imposes no constitutional duty on state trial judges to ascertain a factual basis prior to accepting a guilty plea.... Louisiana law, unlike [federal law] has no statutory provision requiring accompaniment of a guilty plea by the recitation of a factual basis.” State v. Wynne, 926 So.2d at 796, Due process requires a finding of a significant factual basis for a defendant’s guilty plea only when a defendant proclaims his innocence or when the trial court is otherwise put on notice that there is a need for an inquiry into the factual basis. State v. Brooks, 38,963 (La.App.2d Cir.9/22/04), 882 So.2d 724, 730, writ denied, 2004-2634 (La.2/18/05), 896 So.2d 30.
See also, North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and progeny.
Hart pled guilty to aggravated battery to avoid a potential conviction for forcible rape. Any assertions now made under Alford, supra, | ^notwithstanding, Hart did not protest his innocence of this offense and entered a “straight up” unqualified plea of guilty to the offense. Further, the court informed Hart that, for purposes of this plea, it considered the steering wheel of Hart’s car to be a dangerous weapon under La. R.S. 14:34. The trial court’s explanation ensured that Hart was fully apprised of the charge against him and the elements thereof, and Hart indicated that he understood. This claim is without merit.

Decree

For the foregoing reasons, we affirm Hart’s convictions and sentences.
AFFIRMED.

. The original indictment charged:
Count 1: Aggravated assault on a police officer with a firearm;
Count 2; Aggravated assault on a police officer with a firearm;
Count 3; Unlawful use of a laser on a police officer;
Count 4: Resisting an officer with force or violence; , ;
Count 5: Second degree kidnapping;
Count 6: Forcible rape;
Count 7: Domestic abuse battery;
Count 8: Possession of cocaine.

, The written motion is not included with the appellate record. However, after oral argument, counsel submitted an unsigned copy of " the written motion along with court minutes of the proceedings which have been received by toe Court but not filed in toe record. La. C.Cr.P. art. 559 allows for a "motion of defendant” to withdraw a guilty plea, and that oral motion and argument was presented to the trial court.-

. One of Hart’s Louisiana prior attorneys was present at the hearing. No request to have him testify was made.

. This conclusion also defeats Hart's claim regarding his entitlement to a continuance.

. Considering that Hart allegedly faced conviction for only one offense in Arkansas, these facts would tend to refute counsel’s argument that the Louisiana case was a "throwaway” case.

. For these reasons, Hart's complaint that the trial court should not have considered whether the Louisiana plea was in the defendant’s best interest, is without merit.

. Indeed, the only information regarding the result of that matter is counsel’s assertion that the penalty from the Arkansas offense would likely amount to approximately one year.