# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-545

**STATE OF LOUISIANA**

**VERSUS**

**TYLER JOHN CLAUSE**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. CR-2021-1404
HONORABLE JUDI F. ABRUSLEY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## GARY J. ORTEGO
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of D. Kent Savoie, Charles G. Fitzgerald, and Gary J. Ortego, Judges.

**AFFIRMED.**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**P. O. Box 2125**
**Lafayette, LA 70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Tyler John Clause**

**Honorable Joe Green**
**District Attorney, Thirty-third Judicial District Court**
**John Richardson**
**P. O. Box 839**
**Oberlin, LA 70655**
**(337) 639-2641**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**ORTEGO, Judge.**

On October 14, 2021, Defendant, Tyler John Clause, was charged by Bill of Information with entry on or remaining in places or on land after being forbidden, in violation of La.R.S. 14:63.3; simple criminal damage to property under $1,000, in violation of La.R.S. 14:56; home invasion, in violation of La.R.S. 14:62.8; and attempted second degree murder, in violation of La.R.S. 14:27 and 14:30.1. Defendant pled not guilty to the charges on October 28, 2021, and a jury trial was scheduled for April 11, 2022. On January 7, 2022, Defendant filed a motion for speedy trial, and the trial court granted same, ordering Defendant's trial to commence within one hundred twenty days, as required by law.

On January 28, 2022, Defendant, with his counsel present, withdrew his not guilty pleas, and entered a plea of no contest to home invasion and attempted second degree murder. Defendant testified and acknowledged for the record that there was no plea agreement with the State, nor any sentencing recommendation, and that he was entering his plea "straight up." The trial court then fully *Boykinized* Defendant, accepted Defendant's pleas, ordered a presentence investigation (PSI), and set the matter for a sentencing hearing on March 28, 2022. Pursuant to Defendant's pleas, the State dismissed the remaining charges.

On March 14, 2022, Defendant filed a motion to withdraw his no contest pleas, as he claimed they were not knowingly and intelligently entered. The State filed a memorandum in opposition arguing that Defendant's pleas were freely, knowingly, and voluntarily entered after Defendant had the benefit of reviewing discovery and after Defendant certified he was ready for trial in his motion for speedy trial. The trial court denied the motion to withdraw pleas following a hearing conducted March 28, 2022. With the concurrence of Defendant and his counsel, Defendant's sentencing hearing was re-set to the next month.

On April 4, 2022, the trial court sentenced Defendant to five years at hard labor for home invasion and fifteen years at hard labor without the benefit of parole, probation, or suspension of sentence for attempted second degree murder. The sentences were ordered to run consecutively.  Although no objection was made at the time of sentencing, Defendant subsequently filed a written motion on April 12, 2022, to reconsider his sentence, wherein he alleged the sentences were excessive. The trial court held a hearing on April 28, 2022, and denied the motion.

On June 6, 2022, Defendant filed a motion for appeal, which was granted by the trial court.  Defendant is now before this court alleging four assignments of error:

> 1. The trial court abused its discretion in not allowing Defendant to withdraw his pleas of no contest.
>
> 2. Defendant's no contest pleas were not knowingly, voluntarily, or intelligently entered. The *Boykin* colloquy was deficient, because the trial court knew Defendant did not fully understand the pleas and there was no factual basis established.
>
> 3. The trial court's sentence of fifteen years at hard labor for attempted second degree murder is excessive under the facts of this case.
>
> 4. The trial court abused its discretion in running Defendant's sentences consecutive to one another considering he was convicted by plea and the acts arose from a single course of conduct.

For the following reasons, we affirm Defendant's convictions and sentences.

## **FACTS**

Since this case was resolved by Defendant's no contest pleas, the facts in this record were not fully developed. However, the record shows that on August 29, 2021, officers with the Oakdale Police Department were dispatched to an apartment to respond to an active disturbance.  Upon their arrival, the officers were confronted by Tyler John Clause ("Defendant") outside the apartment. Defendant walked towards the officers and told them "to shoot him."  The officers detained Defendant,

2

and while assessing the scene, discovered the victim, Emily Miller (Ms. Miller), lying unresponsive in the hallway. Ms. Miller was then rushed to the hospital.

There were two witnesses who were present during this altercation. Both reported Defendant was Ms. Miller's boyfriend, and that Ms. Miller made Defendant leave her apartment after they had an argument. They further reported that Defendant left as requested but returned shortly thereafter. Upon his return, Defendant broke a window, entered the apartment, and started punching and kicking Ms. Miller, while telling her that he would kill her and himself. Defendant continued beating Ms. Miller even after she fell to the ground and began having seizures, and he only stopped when the officers arrived. Defendant voluntarily confessed to breaking into the apartment and beating Ms. Miller. Defendant also made inculpatory statements during several recorded phone calls from the parish jail after his arrest.

At the time of the incident, there was also an active protective order in effect against Defendant and in favor of Ms. Miller.

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we conclude that there are no errors patent.

## ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO:

In his first assignment of error, Defendant asserts the trial court abused its discretion in denying his motion to withdraw pleas, and in his second assignment of error, Defendant argues his pleas were not knowingly, voluntarily, or intelligently entered, and the *Boykin* colloquy was deficient. As these assignments of error are interrelated, we will address them together.

Before addressing the merits of Defendant's arguments, we set forth the applicable law regarding a motion to withdraw plea and the standard of review on appeal:

> The discretion to allow the withdrawal of a guilty plea under La. C. Cr. P. art. 559(A) lies with the trial court and such discretion cannot be disturbed unless an abuse or arbitrary exercise of that discretion is shown. *State v. Martin*, 48,045 (La. App. 2 Cir. 05/15/13), 115 So.3d 750. A defendant has no absolute right to withdraw a guilty plea. *Id.*
>
> Under La. C. Cr. P. art. 556.1, a valid guilty plea must be a voluntary choice by the defendant and not the result of force or threats. La. C. Cr. P. art. 556.1 also provides that prior to accepting a guilty plea, the court must personally inform the defendant of the nature of the charge to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty. When the record establishes that an accused was informed of and waived his right to a trial by jury, to confront his accusers, and against self-incrimination, the burden shifts to the accused to prove that despite this record, his guilty plea was involuntary. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Cooper*, 52,408 (La. App. 2 Cir. 11/08/18), 261 So.3d 975; *State v. Martin, supra.*
>
> An express and knowing waiver of those rights must appear on the record, and an unequivocal showing of a free and voluntary waiver cannot be presumed. *Boykin, supra*; *State v. Johnson*, 51,430 (La. App. 2 Cir. 07/05/17), 224 So.3d 505; *State v. Kennedy*, 42,850 (La. App. 2 Cir. 01/09/08), 974 So.2d 203. A plea of guilty normally waives all nonjurisdictional defects in the proceedings prior to the plea, including insufficiency of the evidence. *State v. Crosby*, 338 So.2d 584 (La. 1976); *State v. Johnson, supra*; *State v. Stephan*, 38,612 (La. App. 2 Cir. 08/18/04), 880 So.2d 201. A validly entered guilty plea, or plea of *nolo contendere*, waives any right a defendant might have had to question the merits of the state's case and the factual basis underlying the conviction. *State v. Bourgeois*, 406 So.2d 550 (La. 1981); *State v. Cooper, supra*; *State v. Hardy*, 39,233 (La. App. 2 Cir. 01/26/05), 892 So.2d 710.
>
> When ruling on a motion to withdraw a guilty plea, the trial court should look beyond the *Boykinization* and consider all relevant factors. *State v. Griffin*, 535 So.2d 1143 (La. App. 2 Cir. 1988); *State v. Green*, 468 So.2d 1344 (La. App. 1 Cir. 1984); *State v. Banks*, 457 So.2d 1264 (La. App. 1 Cir. 1985). A court, when called upon to ascertain an accused's state of mind, has the power, notwithstanding a record waiver of constitutional rights, to determine whether other factors present at the time of a guilty plea, whether inside or outside the plea colloquy record, were sufficient to render the plea involuntary or unintelligent. *State v. Lewis*, 421 So.2d 224 (La. 1982); *State v. Galliano*, 396 So.2d 1288 (La. 1981); *State v. Griffin, supra.*

> In order to properly exercise its discretion and in order for the appellate court to review the exercise of that discretion, the trial court should conduct a hearing or inquiry on defendant's motion to withdraw a guilty plea. *State v. Lewis*, *supra*; *State v. Griffin*, *supra*. Reasons supporting withdrawal of the plea would ordinarily include factors bearing on whether the guilty plea was voluntarily and intelligently made, such as breach of a plea bargain, inducement, misleading advice of counsel, strength of the evidence of actual guilt, or the like. A mere change of heart or mind by the defendant as to whether he made a good bargain would not ordinarily support allowing the withdrawal of a bargained guilty plea. *Id.*

*State v. McGarr*, 52,641, 52,642, pp. 10-12 (La.App. 2 Cir. 4/10/19), 268 So.3d 1189, 1196-97.

Here, on January 28, 2022, Defendant, with his counsel present, entered his no contest pleas, and prior to accepting Defendant's pleas, the trial court addressed Defendant as to and in accordance with the mandates set forth in La.Code Crim.P. art. 556.1. Defendant was sworn in and testified that he was twenty-seven years old and had a high school diploma. Defendant denied being under the influence of any type of drugs or alcohol. Defendant acknowledged that he had the opportunity to discuss his case with defense counsel and to ask questions if he needed counsel to explain anything. The trial court asked Defendant if he read and understood the plea form before signing it to which Defendant answered affirmatively. When asked, Defendant initially indicated he understood why he was in court "[f]or the most part[.]" Based upon Defendant's response, the trial court then further explained that the purpose of the hearing was to discuss the constitutional rights of Defendant and to determine if Defendant was freely and voluntarily waiving these rights before entering guilty or no contest pleas.

The record reflects that the trial court then fully informed Defendant of his constitutional rights. The court notified Defendant that by pleading guilty, he was giving up his constitutional rights, including the rights not to plead guilty and have a trial by jury or judge, to have the assistance of an attorney who would be appointed

5

if he could not afford one, the right to confront and cross-examine any witnesses the State may call to testify, the right to testify at his trial, the privilege against self-incrimination, and the right to appeal his convictions if found guilty at trial.

The following colloquy ensued:

**THE COURT:**

. . . Do you understand that by pleading guilty there will be no trial because you are waiving your right to a trial and to all of the rights you are entitled to at trial, including appeal?

**MR. CLAUSE:**

Yes, ma'am.

**THE COURT:**

And that is what you wish to do?

**MR. CLAUSE:**

That is what I have been advised to, so, yeah.

**THE COURT:**

Okay. Well, now, you know, your attorney can advise you, but the ultimate decision is yours.

**MR. CLAUSE:**

Yeah, that is what I am gonna [sic] do.

Then, the trial court described the nature of the charge as well as the minimum and maximum sentence Defendant could receive for home invasion. After describing what the State would have to prove to convict him of attempted second degree murder and the applicable penalty range, the trial court asked Defendant if he understood the nature of that charge. Defendant indicated he "kind of" understood it, but he knew the sentence was a very serious one. Based upon Defendant's response, the trial court again asked Defendant follow-up questions, to-wit:

**THE COURT:**

Okay. So, to these charges, Mr. Clause, how do you wish to plead?

**MR. GUIDRY [DEFENSE COUNSEL]:**

Guilty or no contest, one of the two.

**MR. CLAUSE:**

What is no contest?

**THE COURT:**

You want to plead no contest to both of them?

**MR. CLAUSE:**

What does that mean though?

**MR. GUIDRY:**

I can explain it to him, Judge.

**(MR. GUIDRY EXPLAINS NO CONTEST TO THE DEFENDANT)**

**MR. CLAUSE:**

Yeah, no contest.

**THE COURT:**

Are you pleading no contest to the charge of home invasion and attempted second degree murder because you are in fact guilty of that charge -- those charges?

**MR. CLAUSE:**

Yes, ma'am.

The trial court then determined Defendant's no contest pleas were being made without any threats or inducements and were knowingly, freely, and voluntarily entered. Then, the pleas were accepted by the trial court, and the matter was set for sentencing on March 28, 2022.

Prior to sentencing, however, on March 14, 2022, Defendant filed a motion to withdraw his pleas. Defendant asserted he should be allowed to withdraw his pleas for the following reasons:

1. At the time Defendant entered the plea of guilty, he was under extreme emotional stress and his mental state was such that he did not fully appreciate the consequences of his action.

2. At the time of entering the plea of guilty, it appeared that the evidence available to the State could not be rebutted and that the probability of conviction was overwhelming, although Defendant denies that he committed the offense charged.

3. Since the time of entering the plea of guilty, the Defendant discovered exculpatory evidence which led him to believe that the evidence available to the State could be effectively rebutted. More particularly, on March 11, 2022, the alleged victim in this matter, Emily Miller, contacted defense counsel and gave a recorded statement stating that in her opinion Mr. Clause did not have intent to kill her at the time of the incident and that she wished to dismiss all charges against the Defendant.

The State filed an opposition to Defendant's motion wherein it argued the record clearly established the *Boykinization* was not constitutionally infirm. According to the State, Defendant's allegation of emotional stress was insufficient to prove he entered the pleas unintelligently or involuntarily. Regarding Defendant's argument that he misjudged the strength of the State's case, the State argues the evidence of Defendant's actual guilt had been and remains compelling. The record reflects that there were two witnesses present at the time of the break-in and the beating of Ms. Miller, and both witnesses gave statements to police identifying Defendant as the assailant. The State further argued that Defendant admitted to both the police at the scene and in recorded phone calls made from the parish jail that he broke into Ms. Miller's apartment and that he beat her. The State further argued that Ms. Miller's opinion that Defendant did not have the intent to kill her was pure speculation and thus would be inadmissible at trial. Finally, the State argued that granting Defendant's motion would "encourage havoc in the criminal court docket,"

8

as it would allow defendants to manipulate the docket by filing for a speedy trial, pleading guilty, and then withdrawing their pleas once the trial date had passed, effectively wresting complete control of the docket from the State and the trial courts.

On March 28, 2022, the trial court heard Defendant's motion to withdraw his prior pleas. The State argued that the record showed that the trial court informed Defendant of the constitutional rights he would be waiving by pleading no contest, and that Defendant indicated his understanding before entering his pleas, thus shifting to Defendant the burden of proving a constitutional deficiency in his pleas.

Defense counsel agreed that it is Defendant's burden to prove a deficiency, but argued that the trial court has broad discretion in ruling on a motion to withdraw a plea, given Ms. Miller's recorded statement that she did not want Defendant to be prosecuted on the charges and did not feel that Defendant was attempting to kill her. However, the record shows Defendant's counsel did not offer Ms. Miller's recorded statement into evidence, specifically after the State argued to the court that it had evidence that Defendant had called the victim 1,200 times while incarcerated, notwithstanding the then active Temporary Restraining and Protective Orders prohibiting Defendant from contacting Ms. Miller, along with evidence of his jailhouse telephone recordings in which Defendant admitted that he had broken into Ms. Miller's apartment and had beaten her.

The record shows the trial court called Defendant to explain to the court, under oath, why he wanted to withdraw his pleas. Defendant testified that he was under the influence of alcohol at the time of the crimes, and "it was not [his] intentions to hurt the girl[.]" He testified that he was generally a law-abiding citizen and wanted to pursue a career in the military. According to Defendant, it had always been his intention to "work out a plea to get . . . sent to the army."

9

Then Defense counsel questioned Defendant as follows:

Q.     Why did you ask me to file that motion [to withdraw pleas]? Did you feel that you made that decision hastily or - -

A.     I was not prepared to take that plea and stuff like that. Once I realized it was ten (10) to fifty (50) years, I was like yeah, no I can't do this. I [have] kids to take care of and I [have] a life to live. I'm not trying to hurt [anyone] and it was not my intention to hurt the girl. I wasn't even trying to cause any physical harm to her. It just happened to work out that way.

Q.     So, basically, it's your intention to go to trial on this?

A.     Yes sir.

Q.     If you can't get some kind of plea worked out?

A.     Yes sir.

Q.     And in fact, when you entered a plea here it was just straight up to what you were charged with that one count, true?[1]

A.     Yes sir. I was on the spot and that was not my intention to - - I didn't fully understand what was actually happening and stuff.

Q.     So, when you entered the plea and the Judge went over a lot of things on the record with you, in all honesty, she asked you a lot of questions. Did you understand the consequences of what you were doing when you said no contest?

A.     To some degree yes, but I didn't know what exactly that would entail.

After considering the evidence presented, the trial court found Defendant's no contest pleas were not entered hastily or involuntarily and denied Defendant's motion to withdraw his pleas.

In brief to this court, appellate counsel claims Defendant entered his pleas on a date that was not a regularly scheduled court appearance date, and Defendant "was not warned, by a different trial counsel, of the plea offer until he was brought from jail to court." Appellate counsel argues this suggests Defendant did not have

---

[1]As discussed, Defendant pled no contest to home invasion and attempted second degree murder.

10

sufficient time to consider the consequences of the pleas which is demonstrated by his lack of understanding as to the nature of the charges. Defendant argues this confusion was compounded by the fact that the State did not provide a factual basis for either charge, which should have put the trial court on notice that Defendant had reservations about entering the pleas. Finally, Defendant contends his motion to withdraw plea should have been granted because Ms. Miller subsequently gave a recorded statement in which she opined Defendant did not intend to kill her, a necessary element for the State to prove attempted second-degree murder. Based on the foregoing, Defendant contends the trial court abused its discretion in denying his motion to withdraw pleas.

In opposition, the State asserts there was no plea offer made by the State, but rather that it was the defense counsel who informed the State, two weeks prior to trial, that Defendant might be willing to enter a plea of no contest, "straight up," which the State eventually accepted. The State further argues that the *Boykinization* was proper as Defendant was informed of his constitutional rights and that he would be waiving those rights by entering his no contest pleas. Finally, the State maintains that a factual basis was not required for the no contest pleas, because Defendant unequivocally acknowledged his guilt.

We will first address the argument that Defendant was brought to court without warning and without prior discussion about entering the pleas. Though the record is sparse, it indicates that at his arraignment on October 28, 2021, Defendant's trial was initially scheduled for April 11, 2022. Then, on January 7, 2021, Defendant filed his motion for speedy trial. The trial court granted Defendant's motion on January 10, 2022, and ordered Defendant's new jury trial date to be set within 120 days of said Order, thus no later than May 10, 2022.

11

Thereafter and as discussed, Defendant entered his no contest pleas on January 28, 2022, and the motion to withdraw pleas was filed on March 14, 2022. Consequently, we find that Defendant is incorrect as to his allegedly untimely or defective notice of his plea hearing. Further, the record shows that Defendant testified at the plea hearing of January 28, 2022, that Defendant had in fact discussed his case with defense counsel, who had explained the plea form to him prior to that hearing.

A review of the transcript clearly shows that Defendant was informed of and voluntarily waived all his constitutional rights. Although Defendant initially stated he was waiving his constitutional rights on the advice of his attorney, and after the trial court informed the Defendant that the decision rested solely with him, Defendant then unambiguously declared that he wished to voluntarily waive his rights. Further, Defendant was given ample opportunity to request clarification if he did not understand the nature of the charges or the consequences of the pleas. Our review of the transcript shows the trial court answered Defendant's questions and gave a thorough explanation of the law, and Defendant's constitutional rights, and that Defendant expressed his satisfaction with the explanations during his *Boykinization*.

Additionally, and as the State correctly points out, a factual basis was not required for Defendant's plea. Unlike an *Alford* plea a factual basis is only necessary under certain circumstances for a no contest plea:

> Generally, a defendant waives the right to question the merits of the State's case or the underlying factual basis by entering a plea of guilt, or plea of *nolo contendere*. *State v. Brooks*, 38,963 (La.App. 2 Cir. 9/22/04), 882 So.2d 724. "When a guilty plea is otherwise voluntary, there is no necessity to ascertain a factual basis for that plea unless the accused protests his innocence or for some other reason the trial court is put on notice that there is a need for such an inquiry. In that event, due process requires a judicial finding of a *significant factual basis* for the defendant's plea." *State v. Linear*, 600 So.2d 113, 115

12

(La.App. 2 Cir.1992); *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). However, this court has held that a plea of *nolo contendre* [sic] alone, unlike a guilty plea accompanied by a claim of innocence, does not put the trial court on notice that a significant factual basis must be obtained. *State v. Villarreal*, 99-827 (La.App. 5 Cir. 2/16/00), 759 So.2d 126, *writ denied*, 00-1175 (La.3/16/01), 786 So.2d 745; *State v. Guffey*, 94-797 (La.App. 3 Cir. 2/1/95), 649 So.2d 1169, *writ denied*, 95-973 (La.9/22/95), 660 So.2d 469.

*State v. Johnson*, 04-1266, pp. 6-7 (La.App. 3 Cir. 2/2/05), 893 So.2d 945, 950.

Here, Defendant did not attempt to profess his innocence. Rather, Defendant openly admitted guilt when the trial court asked if he was pleading no contest because he was guilty of the charges. Further, and in addition to Defendant's admission of guilt at his plea hearing, the record reflects that there were several eyewitnesses who identified Defendant as the assailant, and that, at the scene, Defendant confessed to the police to breaking into the apartment and beating Ms. Miller. Additionally, by entering his pleas, Defendant waived his right to question the merits of the State's case. *See State v. Bourgeois*, 406 So.2d 550 (La.1981).

We similarly find no merit to Defendant's argument that the motion to withdraw his pleas should have been granted due to Ms. Miller's statement. As to Ms. Miller's statement that she did not think Defendant intended to kill her, we find same to be not only speculative, but contradicted by contemporaneous eyewitnesses accounts, along with the abundant reliable evidence in the record. "[T]he district court can look beyond the *Boykinization* and consider all relevant factors, such as the breach of a plea bargain, inducement, misleading advice of counsel, strength of the evidence of actual guilt, or the like." S*tate v. Hart*, 50,295, p. 11 (La.App. 2 Cir. 11/18/15), 183 So.3d 597, 604 (citations omitted).

Consequently, and applying the law to the facts of this case, we conclude that the trial court did not abuse its discretion in denying Defendant's motion to withdraw his no contest pleas. The record is clear that the trial court considered the totality of

the circumstances surrounding Defendant's pleas and found the pleas were entered voluntarily and intelligently. Further, Defendant has failed to show there was an infringement of his constitutional rights or a procedural irregularity in the taking of the plea. Rather, here it seems Defendant merely sought to withdraw his no contest pleas in an attempt to bargain for a better plea deal, as evidenced by his testimony and statements at the hearing on the motion to withdraw pleas. However, as mentioned above, a defendant's mere change of heart or mind as to whether he made a good bargain does not ordinarily support allowing the withdrawal of plea. *Hart*, 183 So.3d 597.

Accordingly, these assignments of error are without merit.

**ASSIGNMENTS OF ERROR NUMBERS THREE AND FOUR:**

Defendant also appeals the imposed sentences on two other grounds. First, Defendant asserts the fifteen-year sentence he received for attempted second degree murder is constitutionally excessive. Second, Defendant claims the trial court abused its discretion in ordering that his sentences be served consecutively. We will address these sentencing claims together.

As a preliminary matter, we must first determine whether Defendant can seek review of the sentences imposed. Louisiana Code of Criminal Procedure Article 881.2(A)(2) states: "The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." However, this court has consistently held that it is "not automatically precluded from reviewing a sentence unless the plea agreement provides a specific sentence or sentencing cap." *State v. Curtis*, 04-111, p. 2 (La.App. 3 Cir. 8/4/04), 880 So.2d 112, 114, *writ denied*, 04-2277 (La. 1/28/05),

14

893 So.2d 71 (citing *State v. Pickens*, 98-1443 (La.App. 3 Cir. 4/28/99), 741 So.2d 696, *writ denied*, 99-1577 (La. 11/5/99), 751 So.2d 232, *writ denied*, 01-2178 (La. 4/19/02), 813 So.2d 1081).

Because the plea agreement in this case did not result in specific sentences or sentencing caps, Defendant did not explicitly waive the right to appeal his sentences in the plea agreement. Thus, we conclude that Defendant is not precluded from seeking review of his sentences.

*A.) Attempted Second Degree Murder*

We turn first to Defendant's claim that his sentence for attempted second degree murder is constitutionally excessive. This is the same argument made in Defendant's motion to reconsider sentence and at the hearing on this motion; therefore, it is properly before this court. *See* La.Code Crim.P. art. 881.1.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might

have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261, as seen in *State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writ denied*, 07-320 (La. 11/9/07), 967 So.2d 496, *and writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626, and in *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183.

Looking first to the nature of the offense, Defendant voluntarily pled no contest to attempted second degree murder. Attempted second degree murder is specifically enumerated as a "crime of violence," and carries a sentencing range of "not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence." La.R.S. 14:2(B), 14:27(D)(1)(a), and 14:30.1. As such, Defendant's sentence of fifteen years represents the lower end of the sentencing range.

16

At sentencing, two witnesses were called by Defendant to testify, Ms. Miller and himself. Ms. Miller testified that, on the night of the incident, she had been in a fight with another woman, so some of the documented injuries she sustained may have resulted from that fight. Though Ms. Miller initially testified that Defendant hit her, she later stated that he did not hit her or "make [her] pass out." Ms. Miller then asked the trial court to give Defendant a sentence of "a couple of months to a year." Defendant similarly asked for the lowest possible sentence due to his status as a first felony offender and alleged mental health problems. According to defense counsel, Ms. Miller's preexisting medical condition that caused seizures and the preexisting injuries attributable to another altercation made Defendant's actions look more severe and should be considered in mitigation.

In opposition, the State pointed out that Defendant physically beat Ms. Miller even while she was actively having seizures and only stopped when the police officers arrived, an act which demonstrated deliberate cruelty. The State further argued that even after his arrest and incarceration, Defendant made threats to kill Ms. Miller. Additionally, the State noted Defendant repeatedly violated the protective order by contacting Ms. Miller 1,200 times from the parish jail, with the specific intent to influence Ms. Miller and these proceedings, and thus suggesting Ms. Miller's testimony was swayed and tainted by Defendant's continued and constant communications.

As to the second factor in *Soileau,* 153 So.3d 1002*,* the nature and background of the offender, Defendant was described as a twenty-seven-year-old first felony offender at the time of sentencing. The record shows he obtained a high school degree and was a father. The PSI reflected that, in addition to the instant felony convictions, Defendant had numerous arrests in Lafayette Parish which resulted in one misdemeanor conviction for aggravated assault in 2018. Additionally, the PSI

17

report shows that Defendant still has several pending charges for domestic abuse battery and domestic abuse aggravated assault.

The final factor in *Soileau,* 153 So.3d 1002, is a comparison of sentences imposed for similar crimes. In *State v. Meaux*, 21-522 (La.App. 3 Cir. 2/23/22), 335 So.3d 309, the defendant shot his ex-girlfriend in the torso, pled no contest to attempted second degree murder, and was sentenced to twenty years. At sentencing, the trial court observed the defendant was a first felony offender, suffered from mental health problems, and was twenty one years old, but also noted a history of domestic violence between the defendant and victim. *Id*. In affirming the defendant's sentence, this court discussed sentences imposed for similar cases as follows:

> Finally, this court has long upheld mid-range sentences for first offenders convicted of attempted [second degree] murder. We note similar sentences were upheld in *State v. Wommack*, 00-137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62; *State v. Clark*, 06-508 (La.App. 3 Cir. 9/27/06), 940 So.2d 799, *writ denied*, 06-2857 (La. 9/21/07), 964 So.2d 324; *State v. Sampy*, 07-1059 (La.App. 3 Cir. 3/5/08), 978 So.2d 553, *writ denied*, 08-845 (La. 11/10/08), 996 So.2d 1066; and *State v. Williams*, 16-579 (La.App. 3 Cir. 4/5/17), 216 So.3d 107. The defendant in *Williams* was a first offender who received a twenty-five-year sentence; *Sampy* involved a thirty-year sentence for attempted second degree murder for a first offender who was simultaneously convicted of attempted manslaughter. The defendant in *Wommack*, also a first offender, received a twenty-one-year sentence. The defendant in *Clark* was the only one who was not a first offender, and the court there imposed a twenty-five-year sentence. These cases reflect this court's longstanding affirmation of mid-range sentences for first offenders convicted of attempted murder and support the imposition of a lesser twenty-year sentence.

*Id*. at 314.

After considering the evidence, including the testimony of Defendant and Ms. Miller, along with the PSI, the trial court carefully and fully articulated the basis of the sentences imposed upon Defendant, as follows:

THE COURT:

> The Court - - considered the factors in mitigation that were brought out. I heard the victim's statement, I studied the PSI, I looked at the prior offense, and I make the following findings regarding this sentence. You entered a plea of no contest to two felonies, and the Court must impose a sentence of imprisonment if any of the following occurs, there is [an undue] risk that during the period of a suspended sentence or probation, you would commit another crime. You're in need or correctional treatment or custodial environment that can be provided most effectively by your commitment to an institution. These charges are serious - -

MR. CLAUSE:

> I understand ma'am.

THE COURT:

> A lesser sentence would depreciate the seriousness of your crime. Additionally, because of the attempted second degree murder you are not eligible for parole - probation. And although, you have no prior felony convictions your record indicates that you may have developed a pattern which must be changed, if you are to live in this society.

MR. CLAUSE:

> Yes ma'am.

THE COURT:

> As a matter of fact, there was an order of protection filed that - - that was rendered in Lafayette Parish on January 4, 2021 for a year. And this offense took place during that year when you were [supposed] to be nowhere around Ms. Miller.

MR. CLAUSE:

> Yes ma'am.

THE COURT:

Same as those phone calls, you were told not to have any contact with her, but yet there were over twelve (1,200) of them. So, Mr. Clause I know you're twenty - seven, okay. But you have to understand that when you're told not to do something, don't do it.

MR. CLAUSE:

Yes ma'am.

THE COURT:

There are consequences - - I have looked at the sentencing guideline and the sentence which I impose for you is as follows. On the home invasion, I sentence you to serve five years at hard labor in the custody of Louisiana Department of Corrections. You're given credit for time served, pursuant to Code of Criminal Procedure Article 880. On the attempted second degree murder, and I just want to say this to everyone my number was going to be higher, but you have shown a little remorse today.

MR. CLAUSE:

Yes ma'am.

THE COURT:

Not as much as I would like to see - - but I did lower it some. I'm gonna sentence you in that matter to serve fifteen years at hard labor in the custody of Louisiana Department of Corrections without benefit of probation, parole, or Suspension of sentence. All remaining counts are dismissed, you're given credit for time served. These sentences will run consecutive. The reason for the consecutive sentences is this, the seriousness in nature of the crime you're convicted of. The circumstances of the crime there was a protective order in place, you still went to that woman's house, knocked a window out, got in the house, and caused her harm. And then the need to protect the public from you doing this to anyone else. The sentencing guidelines stating the sentence for attempted second degree murder is imprisonment at hard labor for not less than ten years nor more than fifty years without benefit of parole, probation, or suspension of sentence.

20

Considering the facts of this case and Defendant's sentence in light of the *Soileau* factors, we find that the record fully supports the trial court's reasoning that a lesser sentence would deprecate the seriousness of the offense due to Defendant's pattern of domestic abuse and repeated violations of the protective order. Though Defendant argues on appeal that a lesser sentence is more suitable, the pertinent question is whether the trial court abused its broad sentencing discretion. *See State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996). We conclude that Defendant has failed to prove the trial court abused its discretion in sentencing him to fifteen years for attempted second degree murder.

Accordingly, we find Defendant's sentence for attempted second degree murder is not constitutionally excessive.

## B) Consecutive Sentences

Lastly, we examine the trial court's imposition of consecutive sentences for Defendant's home invasion and attempted second degree murder convictions. Louisiana Code of Criminal Procedure Article 881.1(E) provides the mechanism for preserving the review of a sentence on appeal:

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

On a motion to reconsider sentence, La.Code Crim.P. art. 881.1 requires the defendant to include the specific ground upon which the motion is based. If the defendant does not include a specific ground for reconsideration, the appeal is limited to a claim of constitutional excessiveness. *See State v. Vice*, 21-143 (La.App. 3 Cir. 10/6/21), 329 So.3d 388.

In *State v. Mims,* 619 So.2d 1059 (La.1993), the supreme court discussed a purpose of La.Code Crim.P. art. 881.1 as follows:

> [O]ne purpose of the motion to reconsider is to allow the defendant to raise any errors that may have occurred in sentencing while the trial judge still has the jurisdiction to change or correct the sentence. The defendant may point out such errors or deficiencies or may present argument or evidence not considered in the original sentencing, thereby preventing the necessity of a remand for resentencing.

In Defendant's motion to reconsider sentence, Defendant merely makes a general claim relating to the excessiveness of his sentences. Defendant did not allege sufficient facts in his motion to support his claims, nor did Defendant provide any evidence or proof that the trial court erred in imposing consecutive sentences. As discussed, we further find that the trial court, after considering the evidence, including the testimony of Defendant and Ms. Miller, along with the PSI, carefully, fully, and properly articulated the basis of the sentences imposed upon Defendant, and thus are not constitutionally excessive.

Accordingly, and pursuant to the record before us, we find that these assignments of error lack merit.

## DECREE

For the foregoing reasons, we affirm Defendant's pleas, convictions, and sentences.

**AFFIRMED.**